09-1556-cv (L)
John J. Fiero and Fiero Brothers, Inc. v. FINRA

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

August Term, 2009

(Argued: April 6, 2010                    Decided: October 5, 2011)

Docket Nos. 09-1556-cv(L), 09-1863-cv(XAP)

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

JOHN J. FIERO and FIERO BROTHERS, INC.,

Plaintiffs-Counter-Defendants-Appellants-Cross-Appellees,

v.

FINANCIAL INDUSTRY REGULATORY AUTHORITY, INC.,

Defendant-Counterclaimant-Appellee-Cross-Appellant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

B e f o r e:    JACOBS, Chief Judge, WINTER, and WALKER, Circuit Judges.

Appeal from orders of the United States District Court for the Southern District of New York (Victor Marrero, Judge) dismissing a complaint seeking a declaratory judgment, and entering a money judgment on a counterclaim.  The principal issue is whether the Financial Industry Regulatory Authority, Inc. has the authority to bring court actions to collect disciplinary fines.  We hold that it does not and reverse.

BRIAN D. GRAIFMAN, Gusrae, Kaplan, Bruno & Nusbaum, PLLC, New York, N.Y., for Plaintiffs-Counter-Defendants-Appellants-Cross-Appellees.

TERRI L. REICHER, Financial Industry Regulatory Authority, Inc., Washington, D.C., for Defendant-Counterclaimant-Appellee-Cross-Appellant.

WINTER, Circuit Judge:

John J. Fiero ("Fiero") and Fiero Brothers, Inc. ("Fiero Brothers") (together, "Fieros") appeal from Judge Marrero's dismissal of their complaint, which sought a declaratory judgment that, inter alia, the Financial Industry Regulatory Authority, Inc. ("FINRA") lacks the authority to bring court actions to collect disciplinary fines it has imposed. We hold that FINRA lacks such authority. We therefore reverse the dismissal of the complaint and vacate the money judgment on FINRA's counterclaim.

BACKGROUND

a) FINRA's Role

FINRA is a "self-regulatory organization" ("SRO") as a national securities association registered with the SEC pursuant to the Maloney Act of 1938, 15 U.S.C. § 78o-3, et seq. See Desiderio v. Nat'l Ass'n of Sec. Dealers, Inc., 191 F.3d 198, 201 (2d Cir. 1999). FINRA is the successor to the National Association of Securities Dealers ("NASD").[1] It "is responsible

---

[1] FINRA is a non-profit Delaware corporation that was formed in July 2007, when the National Association of Securities Dealers, Inc. ("NASD") consolidated with the regulatory arm of the New York Stock Exchange. See

for conducting investigations and commencing disciplinary proceedings against [FINRA] member firms and their associated member representatives relating to compliance with the federal securities laws and regulations." D.L. Cromwell Invs., Inc. v. NASD Regulation, Inc., 279 F.3d 155, 157 (2d Cir. 2002) (quoting Datek Sec. Corp. v. Nat'l Ass'n of Sec. Dealers, Inc., 875 F. Supp. 230, 232 (S.D.N.Y. 1995) (internal quotation marks omitted)). As a practical matter, all securities firms dealing with the public must be members of FINRA. See Sacks v. SEC, 648 F.3d 945, 948 (9th Cir. 2011) (citing 72 Fed. Reg. 42,169, 42,170 (Aug. 1, 2007); 15 U.S.C. §§ 78c(a)26, 78s(b)) (noting that FINRA is "responsible for regulatory oversight of all securities firms that do business with the public"); see also note 1, supra. FINRA's disciplinary proceedings are governed by the FINRA Code of Procedure ("FINRA COP").[2] The FINRA COP has been approved by the SEC, as required by Section 19 of the Securities Exchange Act of 1934. 15 U.S.C. § 78s(b) (describing the required procedure for approval of proposed SRO rule changes).

FINRA has the power to initiate a disciplinary proceeding

Standard Inv. Chartered, Inc. v. Nat'l Ass'n of Sec. Dealers, Inc., 637 F.3d 112, 114 (2d Cir. 2011). As a result of this consolidation, FINRA is the sole SRO providing member firm regulation for securities firms that conduct business with the public in the United States. Fin. Indus. Regulatory Auth., Inc. v. Fiero, 882 N.E.2d 879, 880 n.* (N.Y. 2008). Much of the facts and background in this case occurred prior to July 2007, so we will refer to the appellee as the NASD where appropriate. The distinction is, however, irrelevant to the merits and our disposition of the case.

[2] The entire FINRA COP is contained in the FINRA Manual available at http://finra.complinet.com.

against any FINRA member or associated person for violating any FINRA rule, SEC regulation, or statutory provision. Id. § 78s(h)(3). To issue a complaint, FINRA's Department of Enforcement or Department of Market Regulation must obtain authorization from the FINRA Regulation Board or FINRA Board. FINRA COP § 9211. After a complaint is filed, a hearing panel conducts a hearing and issues a decision. Id. § 9231. Final decisions of the hearing panel may be appealed to the FINRA National Adjudicatory Council ("NAC"), which can affirm, modify, or reverse the hearing panel's decision. Id. §§ 9311, 9349(a), 9268-9269. NAC decisions may then be appealed to the SEC, pursuant to 15 U.S.C. § 78s(d), and from the SEC to the United States Court of Appeals, pursuant to 15 U.S.C. § 78y. 15 U.S.C. §§ 78s(d), 78y(a); see also Mister Discount Stockbrokers v. SEC, 768 F.2d 875, 876 (7th Cir. 1985).

b)     The Disciplinary Action Against the Fieros

Fiero Brothers, a New York corporation, was a FINRA member firm and broker-dealer registered with the SEC. John J. Fiero was the sole registered representative of Fiero Brothers. As such, the Fieros were subject to the regulations and discipline of NASD.

On February 6, 1998, NASD's Department of Enforcement initiated disciplinary proceedings against the Fieros, the merits of which are not pertinent to this appeal. On December 6, 2000, an NASD hearing panel held that the Fieros had violated Section 10(b) of the Exchange Act, Rule 10b-5, and FINRA Conduct Rules

2110, 2120, and 3370.  The hearing panel expelled Fiero Brothers, barred Fiero from associating with any FINRA-member firm in any capacity, and fined the Fieros $1,000,000 plus costs, jointly and severally.

On appeal, the NAC affirmed the hearing panel's decision in its entirety.  John Fiero, Nat'l Adjudicatory Council No. CAF980002, 2002 WL 31476976, at *34 (Oct. 28, 2002).  The Fieros did not appeal the NAC's decision to the SEC.

c)    State Court Proceedings

After the Fieros refused to pay the fine, FINRA commenced an action on December 22, 2003, in New York Supreme Court.  Fin. Indus. Regulatory Auth., Inc. v. Fiero, 882 N.E.2d 879, 880-81 (N.Y. 2008).  On September 12, 2005, the Supreme Court concluded that "NASD's claim [was] firmly based on ordinary principles of contract law" because the Fieros had "expressly agreed to comply with all NASD rules, including the imposition of fines and sanctions" when they voluntarily executed the NASD registration forms.  Nat'l Ass'n of Sec. Dealers, Inc. v. Fiero, 2005 N.Y. Slip Op. 30161 [U], at 2, 2005 WL 6012105 (Sept. 12, 2005).  The Supreme Court further stated that "New York state courts have long recognized the right of a private membership organization to impose fines on its members, when authorized to do so by statute, charter or by-laws," and that "NASD is not 'just a private club,' but a self-regulatory organization, federally-mandated under . . . the Exchange Act to discipline its members and enforce the

5

federal securities laws as well as its own SEC-approved rules."

Id. at 4-5.  On May 11, 2006, the Supreme Court awarded the NASD a judgment of $1,329,724.54.  Nat'l Ass'n of Sec. Dealers, Inc. v. Fiero, 2006 N.Y. Slip Op. 30302 [U], 2006 WL 5251396 (May 11, 2006).

The First Department of the New York Appellate Division affirmed the Supreme Court's decision.  Nat'l Ass'n of Sec. Dealers, Inc. v. Fiero, 827 N.Y.S.2d 4, 5 (1st Dep't 2006).  The New York Court of Appeals granted the Fieros leave to appeal, and on February 7, 2008, reversed on the ground that the state courts lacked subject matter jurisdiction.  Fiero, 882 N.E.2d at 881-82. The court explained that the FINRA complaint constituted an action to enforce a liability or duty created under the Exchange Act, and therefore, fell within the exclusive jurisdiction of the federal courts pursuant to 15 U.S.C. § 78aa.  Id. at 882.

d)  Federal Court Proceedings

On February 8, 2008, the day after the New York Court of Appeals issued its ruling, the Fieros filed the instant action seeking a declaratory judgment that, inter alia, FINRA has no authority to collect fines through judicial proceedings.[3]  FINRA thereafter filed a counterclaim, seeking to enforce the fine under a breach of contract theory.  Both parties moved to dismiss

---

[3] Even prior to the Court of Appeals' ruling, the Fieros had brought an action in the Southern District, which has been voluntarily dismissed without prejudice pursuant to Fed. R. Civ. P. 41(a).

6

the complaint and counterclaim, respectively.

On March 30, 2009, the district court granted FINRA's motion to dismiss the Fieros' claim, denied the Fieros' motion to dismiss FINRA's counterclaim, and instructed the clerk to enter judgment in favor of FINRA.[4]

DISCUSSION

We review a district court's grant of a motion to dismiss <u>de novo</u>. <u>Chase Grp. Alliance v. City of N.Y. Dep't of Fin.</u>, 620 F.3d 146, 150 (2d Cir. 2010). Our review of a district court's legal conclusions, including the interpretation of a federal statute, is also <u>de novo</u>. <u>United States v. Fuller</u>, 627 F.3d 499, 503 (2d Cir. 2010).[5]

---

[4] However, the court's order did not specify the amount of the judgment. On April 2, 2009, the district court issued a more detailed decision and order, setting forth its findings, reasoning, and conclusions as to the earlier judgment, but similar to its earlier order, this decision did not specifically direct entry of a judgment for a specific amount of money. <u>Fiero v. Fin. Indus. Regulatory Auth., Inc.</u>, 606 F. Supp. 2d 500 (S.D.N.Y. 2009). The Fieros and FINRA both timely filed their notices of appeal on April 14, 2009 and April 29, 2009, respectively.

On April 17, 2009, the district court requested a limited remand to correct the omission of the judgment amount. On July 15, 2009, we granted the district court's request, and, thereafter the district court directed the clerk to enter a judgment in favor of FINRA in the amount of $1,010,809.25 with costs and interest. Both parties made timely requests to reinstate the appeals, which we granted on August 12, 2009.

[5] Although both parties had agreed that federal jurisdiction existed, the district court <u>sua sponte</u> decided that it lacked federal question jurisdiction under 28 U.S.C. § 1331, but had diversity jurisdiction under 28 U.S.C. § 1332. <u>Fiero</u>, 606 F. Supp. 2d at 509. We disagree with the district court's conclusion that it lacked federal question jurisdiction.

For jurisdiction to arise under Section 1331, "the claim as stated in the complaint" must "arise[] under the Constitution or laws of the United States." <u>S. New England Tel. Co. v. Global NAPs Inc.</u>, 624 F.3d 123, 132 (2d Cir. 2010) (quoting <u>Carlson v. Principal Fin. Grp.</u>, 320 F.3d 301, 306 (2d Cir. 2003) (internal quotation mark omitted)). The Fieros seek a declaratory judgment under 28 U.S.C. § 2201, "that FINRA has no authority to obtain a money judgment based on" a disciplinary fine imposed pursuant to FINRA's powers under the Exchange Act. <u>See</u> Compl. ¶¶ 1, 16, and 30. On its face, the complaint states a claim under the Exchange Act. We have federal question jurisdiction to determine whether FINRA has authority to collect through

The Fieros argue that while the Exchange Act and FINRA's rules and bylaws authorize FINRA to impose sanctions on its members, it has no authority to bring judicial actions to collect monetary sanctions. FINRA argues that it has this authority under the Exchange Act and from a FINRA rule submitted to, and not disapproved by, the SEC in 1990 ("1990 Rule Change"). See Notice of Filing and Immediate Effectiveness of Proposed Rule Change by NASD Relating to the Collection of Fines and Costs in Disciplinary Proceedings, Exchange Act SEC Release No. 28227, 46 S.E.C. Docket 1049 (July 18, 1990) (hereinafter "SEC Notice of 1990 Rule Change"). We discuss each argument seriatim.

a)    FINRA's Authority Under the Exchange Act

The first question is whether the Exchange Act provides FINRA with the necessary authority. We hold that it does not.

Under Section 15A(b) of the Exchange Act, SRO's have a statutory authority and obligation to "appropriately discipline[]" their members for violation of any provision of the Exchange Act, the rules or regulations promulgated thereunder, or their own rules, "by expulsion, suspension, limitation of activities, functions, and operations, fine, censure, being suspended or barred from being associated with a member, or any

---

judicial proceedings fines levied pursuant to the Exchange Act. See Franchise Tax Bd. v. Constr. Laborers Vacation Trust, 463 U.S. 1, 19 n.19 (1983) (explaining that federal question jurisdiction exists over a declaratory judgment action if, inter alia, the defendant could have brought a coercive claim under federal law against the plaintiff); see also Carlson, 320 F.3d at 307 (holding that the district court has subject matter jurisdiction because it "is clear that the complaint, on its face, seeks relief under ERISA").

other fitting sanction." 15 U.S.C. § 78o-3(b)(7). However, there is no express statutory authority for SRO's to bring judicial actions to enforce the collection of fines.[6]

In the present context the omission is not insignificant. The core issue, of course, is congressional intent, Touche Ross & Co. v. Redington, 442 U.S. 560, 568 (1979), and, in the discussion that follows, we explain why we believe that Congress did not intend to empower FINRA to bring judicial actions to enforce its fines.

The statutory scheme carefully particularizes an array of available remedies, including permissible actions in the federal courts. These include, of course, a variety of actions by private parties for damages. 15 U.S.C. §§ 77k-77l, 78i(f), 78t(b); see Redington, 442 U.S. at 571-72 (discussing generally private rights of action in the Securities Exchange Act).

Also, Section 21(d) of the Exchange Act provides express statutory authority for the SEC to seek judicial enforcement of penalties. See 15 U.S.C. § 78u(d). More specifically, the SEC "may in its discretion bring an action" to enjoin any person who "is engaged or is about to engage in acts or practices constituting a violation" of, inter alia, any provision of the Exchange Act, the rules or regulations thereunder, or the rules

---

[6] It is worth noting that the power granted to SRO's by Section 15A of the Exchange Act to discipline their members applies to all SRO's, and not just FINRA.

9

of a national securities exchange or registered securities association of which such person is a member from such practices. Id. § 78u(d)(1).  Moreover, the SEC has explicit authority to seek monetary penalties for violations of the Exchange Act, the rules and regulations promulgated thereunder, or for the violation of a cease and desist order.  Id. § 78u(d)(3)(A). Under Section 21(e) of the Exchange Act, the SEC may also seek "writs of mandamus, injunctions, and orders" from the federal courts commanding any person to comply with, inter alia, "the provisions of [the Exchange Act], the rules, regulations, and orders thereunder, the rules of a national securities exchange or registered securities association of which such person is a member or person associated with a member . . . ."  Id. § 78u(e). Under Section 21(f), however, the SEC is prohibited from bringing "any action pursuant to subsection (d) or (e) of this section against any person for violation of, or to command compliance with, the rules of a self-regulatory organization . . . unless it appears to the Commission that (1) such self-regulatory organization . . . is unable or unwilling to take appropriate action against such person in the public interest and for the protection of investors, or (2) such action is otherwise necessary or appropriate in the public interest or for the protection of investors."  Id. § 78u(f).[7]

_____

[7] The SEC takes the position that it has the authority to bring an action in a federal district court to enforce any order it issues that affirms sanctions, including fines, imposed by FINRA.  See Delegation of Authority to the Office of the General Counsel, SEC Release No. 42,488, 71 S.E.C. Docket

10

Therefore, when Congress passed the Exchange Act, and to this date, Sarbanes-Oxley Act of 2002, § 3(b), (amending 15 U.S.C. § 78u); Dodd-Frank Wall Street Reform Act, Pub. L. No. 111-203, § 929P, 124 Stat. 1376, 1862-63 (2010) (amending 15 U.S.C. § 78u), it was well aware of how to grant an agency access to the courts to seek judicial enforcement of specific sanctions, including monetary penalties. 15 U.S.C. § 78u(d)(3)(A); see, e.g., SEC v. Rosenthal, Nos. 10-1204-cv(L); 10-1253 (con.), 2011 WL 2271743 (2d Cir. June 9, 2011); SEC v. Tx. Gulf Sulphur Co., 446 F.2d 1301, 1307 (2d Cir. 1971).

In contrast, there are no explicit provisions in the statute authorizing SRO's to seek judicial enforcement of the variety of sanctions they can impose. This is significant evidence that Congress did not intend to authorize FINRA to seek judicial enforcement to collect its disciplinary fines. Redington, 442 U.S. at 571-72 (not implying a private right of action where elsewhere in the Exchange Act Congress demonstrated the ability and explicit intent to create private rights of action).

We need not rely upon negative implications alone, however, because there are statutory provisions that weigh heavily against FINRA's claim of enforcement powers through court actions alleging breach of contract. First, FINRA's sanctions are

---

1910 (March 2, 2000); 15 U.S.C. § 78u(e)(1). Although several other Courts of Appeals have affirmed the SEC's authority to enforce FINRA-imposed sanctions pursuant to Section 21(e), see, e.g., SEC v. Mohn, 465 F.3d 647, 651-52 (6th Cir. 2006); SEC v. McCarthy, 322 F.3d 650, 655 (9th Cir. 2003); SEC v. Vittor, 323 F.3d 930 (11th Cir. 2003); and Lang v. French, 154 F.3d 217, 222 (5th Cir. 1998), this issue is not before us on this appeal.

appealable by an aggrieved party to the SEC and thereafter to the United States Courts of Appeals. Had Congress intended judicial enforcement, it would surely have provided for some specific relief other than leaving SRO's to commonlaw proceedings in state courts or in federal district courts under diversity jurisdiction.[8] Second, where FINRA enforces statutory or administrative rules, or enforces its own rules promulgated pursuant to statutory or administrative authority, it is exercising the powers granted to it under the Exchange Act. Indeed, FINRA's powers in that regard are subject to divestment by the SEC under Section 19(g)(2) of that Act. However, Congress gave the federal courts exclusive jurisdiction to enforce the Exchange Act, 15 U.S.C. § 78aa, and FINRA's breach of contract theory undermines that provision. FINRA contract enforcement actions may bristle with Exchange Act legal issues because the most serious fines levied by FINRA will be for member violations of the Act. For example, the Fieros were charged with a violation of Section 10(b) of that Act. State court enforcement of FINRA fines might well, therefore, entail interpretation of the Exchange Act notwithstanding the exclusive jurisdiction of the federal courts.

One might argue that an inference of congressional intent to

---

[8] One court has even held that NASD is not an "aggrieved person" in a Court of Appeals review proceeding, and that NASD was thus unable to bring a petition for review of an SEC decision vacating an NASD disciplinary decision. Nat'l Ass'n of Sec. Dealers, Inc. v. SEC, 431 F.3d 803, 809-10 (D.C. Cir. 2005).

12

authorize such legal actions by FINRA can be drawn from the seemingly inexplicable nature of a gap in the FINRA enforcement scheme:  fines may be levied but not collected.  However, the gap does not support an inference of inadvertent omission because significant underenforcement of the securities laws and FINRA rules is hardly the inevitable result of FINRA's inability to bring fine-enforcement actions.  FINRA fines are already enforced by a draconian sanction not involving court action.  One cannot deal in securities with the public without being a member of FINRA.  When a member fails to pay a fine levied by FINRA, FINRA can revoke the member's registration, resulting in exclusion from the industry.  Moreover, where a fine is based on a violation of the Exchange Act, the violator will also face a panoply of private and SEC remedies.  See, e.g., 15 U.S.C. §§ 77k-77l, 78i, 78j(b).

Finally, our conclusion is amply supported by NASD's longstanding practices.  It has always relied exclusively upon its powers to revoke the registration of or deny reentry into the industry to punish members who do not comply with sanctions.  U.S. Gen. Accounting Office, SEC and CFTC:  Most Fines Collected, But Improvements Needed in the Use of Treasury's Collection Service 11 (2001).  So far as we can tell, it was not until 1990 that the NASD sought to enforce fines or any other sanction through judicial actions in its own right.  NASD (or any other SRO) may never even have claimed to have the power to do so until

13

1990.  In that year, as discussed infra, NASD proposed a rule and successfully asked the SEC not to disapprove it.  The rule notified the public of a new NASD policy of bringing court actions in its name to collect fines.  NASD, Notice to Members 90-21, available at http://www.finra.org/Industry/Regulation/Notices/Pre-1996/.  This rule, and its effect, are discussed in the next subsection.  And, even after the change in policy in 1990 -- the effect of which turns in part on the question of statutory authority -- the action against the Fieros is said to be the first case brought under that policy.  Appellant's Br. at 10.

Such a longstanding practice supports an inference that NASD believed that it lacked judicial enforcement power.  As the Supreme Court has stated,

> Authority actually granted by Congress of course cannot evaporate through lack of administrative exercise.  But just as established practice may shed light on the extent of power conveyed by general statutory language, so the want of assertion of power by those who presumably would be alert to exercise it, is equally significant in determining whether such power was actually conferred.

Fed. Trade Comm'n v. Bunte Bros., 312 U.S. 349, 352 (1941); see also Bankamerica Corp. v. United States, 462 U.S. 122, 131 (1983) (finding that "the Government's failure for over 60 years to exercise the power it now claims . . . strongly suggests that it did not read the statute as granting such power").

Moreover, NASD's longstanding reliance upon these other

14

substantial enforcement methods was known to Congress, and Congress left that reliance unaltered.  This lack of action further indicates that FINRA is not authorized to enforce the collection of its fines through the courts.  See Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Curran, 456 U.S. 353, 381–82 (1982) (noting that "an implied cause of action under the [Commodities Exchange Act] was a part of the 'contemporary legal context' in which Congress legislated," and that "[i]n that context, the fact that a comprehensive reexamination and significant amendment of the [Commodities Exchange Act] left intact the statutory provisions under which the federal courts had implied a cause of action is itself evidence that Congress affirmatively intended to preserve that remedy" (internal citations omitted)).  The situation here is different from Merrill Lynch in that a failure to bring actions, rather than the bringing of actions, was involved, but the principle of congressional acquiescence is the same.

In sum, the issue is one of legislative intent, and we conclude that the heavy weight of evidence suggests that Congress did not intend to empower FINRA to bring court proceedings to enforce its fines.

b)    FINRA's Authority Under the 1990 Rule

On April 10, 1990, and as amended on June 20, 1990, FINRA filed a rule with the SEC pursuant to Section 19(b)(1) of the Exchange Act.  Self-Regulatory Organizations; Notice of Filing

15

and Immediate Effectiveness of Proposed Rule Change by National Association of Securities Dealers, Inc. Relating to the Collection of Fines and Costs in Disciplinary Proceedings, Exchange Act Release No. 28227, 46 SEC Docket 1049 (July 18, 1990), 1990 WL 320480. The proposal provided notification that the NASD "intends to pursue other available means for the collection of fines and costs imposed . . . in disciplinary decisions" on or after July 1, 1990. Id. at *1. The NASD advised that should "its own internal efforts for the collection of fines . . . fail," it may refer a matter "to external collection agencies and in appropriate situations, . . . seek to reduce such fines to a judgment." Id. at *1 n.2. Along with its SEC filing, the NASD issued a notice to its members in April 1990, informing them of its new policy and outlining how the policy would be implemented. See NASD, Notice to Members 90-21, available at http://www.finra.org/Industry/Regulation/Notices/Pre-1996/. The notice became effective on July 1, 1990. Id. (noting that the "NASD will not pursue the collection of fines and costs assessed in cases concluded prior to July 1, 1990").

In October 1999, NASD sent a second notice to its members notifying them that it would "pursue the collection of any fine in sales practice cases, even if an individual is barred, if . . . there has been widespread, significant, and identifiable customer harm; or the respondent has retained substantial

16

ill-gotten gains."[9]  NASD, Notice to Members 99-86, <u>available at</u> http://www.finra.org/Industry/Regulation/Notices/1999/p004067.

FINRA claims that the 1990 Rule Change constitutes authority for judicial enforcement of its fines.  This claim is something of an exaggeration.  The 1990 Rule Change does not even purport to be newly granted authorization from the SEC to FINRA to bring such judicial actions.  Rather, it appears to assume a pre-existing power and to serve only as a notice of a new policy under that power.

Having found no such pre-existing power, we may nevertheless assume for purposes of analysis that the 1990 Rule Change, if properly obtained, constitutes such authorization.[10]  However, for FINRA to have obtained authority under the 1990 Rule Change to enforce the collection of its disciplinary fines through judicial proceedings, the rule must have been properly promulgated under the procedures established by the Exchange Act.  It was not.

Section 19(b) of the Exchange Act establishes the mechanism by which SRO's can change their governing rules.  <u>See</u> 15 U.S.C. § 78s(b).  To initiate the process, an SRO must file any proposed rule change with the SEC, "accompanied by a concise general

_____

[9] This second notice to members was issued after the NASD enforcement action against the Fieros was initiated, but before the Fieros chose not to pursue an appeal to the SEC.

[10] We of course intimate no opinion on the validity of a properly promulgated rule authorizing fine collection through judicial proceedings.

17

statement of the basis and purpose of such proposed rule change." Id. § 78s(b)(1).[11]  The SEC is then required to publish notice of the proposed rule change and give interested individuals an opportunity to comment prior to either approving or disapproving the rule.  Id.

Under this system, established by Congress in 1975, all new substantive rules and modification of existing rules for SRO's must go through a notice and comment period and obtain SEC approval before becoming effective.  Securities Acts Amendments of 1975, Pub. L. No. 94-29, 89 Stat. 97 (codified as amended at 15 U.S.C. §§ 78a to 80b-4 (1975)); Credit Suisse First Boston Corp. v. Grunwald, 400 F.3d 1119, 1130 (9th Cir. 2005).  A substantive rule -- or legislative one, as it is sometimes called in this Circuit -- creates "new law, right, or duties, in what amounts to a legislative act."  N.Y. State Elec. & Gas Corp. v. Saranac Power Partners, L.P., 267 F.3d 128, 131 (2d Cir. 2001) (citations and internal quotation mark omitted) (defining substantive rule in the context of the Administrative Procedure Act).

Congress also included an exception to the comment and notice requirement of § 19(b)(1) for "'House-Keeping' rules and other rules which do not substantially affect the public interest

---

[11] Congress's intention in adopting § 19(b)(1) was to impose on SRO's "the same standards of policy justification that the Administrative Procedure Act imposes on the SEC."  S. REP. No. 94-75 (1975), reprinted in 1975 U.S.C.C.A.N. 179, 207-08, 1975 WL 12347, at *29.

or the protection of investors." 121 Cong. Rec. 700-183 (1975) (comments of Sen. Harrison Williams); see also Saranac Power Partners, 267 F.3d at 131 (defining interpretive rules as those which "do not create rights, but merely clarify an existing statute or regulation" (citations and internal quotation marks omitted)); Grunwald, 400 F.3d at 1130 n.11. Such proposed rule changes take immediate effect upon filing with the SEC. 15 U.S.C. § 78s(b)(3)(A). In particular, the rule change becomes effective on filing with the SEC if the SRO designates the proposed rule as:

> (i) constituting a stated policy, practice, or interpretation with respect to the meaning, administration, or enforcement of an existing rule of the self-regulatory organization, (ii) establishing or changing a due, fee, or other charge imposed by the self-regulatory organization on any person, whether or not the person is a member of the self-regulatory organization, or (iii) concerned solely with the administration of the self-regulatory organization or other matters which the Commission [may specify].

Id.

In proposing the 1990 Rule Change, the NASD designated it as such a "House-Keeping" rule, "one constituting a stated policy with respect to the enforcement of an existing rule of the NASD under § 19(b)(3)(A)(i) of the [Exchange] Act." See Self-Regulatory Organizations; Notice of Filing and Immediate Effectiveness of Proposed Rule Change by National Association of Securities Dealers, Inc. Relating to the Collection of Fines and Costs in Disciplinary Proceedings, Exchange Act Release No.

19

28227, 46 SEC Docket 1049 at *1, 1990 WL 320480.  Thus, the rule was to become effective upon the SEC's receipt of the filing.  15 U.S.C. § 78s(b)(3)(A).

We, however, are not bound by the NASD's characterization as to whether the 1990 Rule Change affected the substantive rights of members.  Brodsky v. U.S. Nuclear Regulatory Comm'n, 578 F.3d 175, 182 (2d Cir. 2009) ("'The particular label placed upon [an order] by [an agency] is not necessarily conclusive, for it is the substance of what the [agency] has purported to do and has done which is decisive.'" (quoting Columbia Broad. Sys., Inc. v. United States, 316 U.S. 407, 416 (1942))).

Prior to the 1990 Rule Change, as discussed, there was no existing SEC rule or statute that authorized the NASD to initiate judicial proceedings to enforce the collection of its disciplinary fines.  Furthermore, the NASD had a longstanding practice of not seeking to enforce collection through judicial actions.  Indeed, even subsequent to the 1990 Rule Change, NASD did not rely on it to ask courts to enter judgments based on its disciplinary fines.  For example, in 1998, it sought the SEC's assistance in obtaining court orders to direct violators owing NASD fines to pay these amounts.  See U.S. Gen. Accounting Office, SEC and CFTC:  Most Fines Collected, But Improvements Needed in the Use of Treasury's Collection Service 11 (2001).  In response, the SEC agreed to seek court orders under Exchange Act § 21(e)(1) to enforce the NASD's disciplinary fines, but only for

20

cases that it affirmed on appeal and that met other specific requirements.  Id.

This background and the various statutory provisions discussed above demonstrate that the 1990 Rule Change was not simply a stated policy change under 15 U.S.C. § 78s(b)(3)(A) that could bypass the required notice and comment period of Section 19(b).  Rather, it was a new substantive rule that affected the rights of barred and suspended members to stay out of the industry and not pay the fines imposed on them in prior disciplinary proceedings.  As a result, the NASD was required to file the new substantive rule with the SEC under 15 U.S.C. § 78s(b)(1) for publication of a notice and comment period. Because the NASD improperly designated the 1990 Rule Change, it was never properly promulgated and cannot authorize FINRA to judicially enforce the collection of its disciplinary fines.

CONCLUSION

For the foregoing reasons, we reverse the judgment dismissing the appellants' declaratory judgment complaint and vacate the judgment entered in favor of the appellee.

21