19-3976-cv
Banco Safra S.A.-Cayman Islands Branch v. Samarco Mineração S.A., et al.

 UNITED STATES COURT OF APPEALS
 FOR THE SECOND CIRCUIT

 SUMMARY ORDER

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED
ON OR AFTER JANUARY 1, 2007 IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE
PROCEDURE 32.1 AND THIS COURT’S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT
FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE
(WITH THE NOTATION “SUMMARY ORDER”). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT
ON ANY PARTY NOT REPRESENTED BY COUNSEL.

 At a stated term of the United States Court of Appeals for the Second
Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in
the City of New York, on the 4th day of March, two thousand twenty-one.

PRESENT: ROBERT A. KATZMANN,
 RAYMOND J. LOHIER, JR.,
 MICHAEL H. PARK,
 Circuit Judges.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

BANCO SAFRA S.A.-CAYMAN ISLANDS BRANCH,
 Plaintiff-Appellant,

 v. 19-3976-cv

SAMARCO MINERACAO S.A., BHP BILLITON
LIMITED, BHP BILLITON PLC, BHP BILLITON
BRASIL LTDA., VALE S.A.,
 Defendants-Appellees. *

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

* The Clerk of Court is directed to amend the caption as shown above.
For Plaintiff-Appellant Banco Safra S.A.:
 JEREMY A. LIEBERMAN (Emma Gilmore, Jennifer
 Banner Sobers, on the brief), Pomerantz LLP,
 New York, NY.

For Defendant-Appellee Samarco
Mineração S.A.:
 NATHANIEL P.T. READ (Mark S. Cohen, Joanna
 K. Chan, on the brief), Cohen & Gresser LLP,
 New York, NY.

For Defendants-Appellees BHP Billiton
Limited, BHP Billiton Plc, and BHP
Billiton Brasil Ltda.:
 Brendan P. Cullen, on the brief, Sullivan &
 Cromwell LLP, Palo Alto, CA.

For Defendant-Appellee Vale S.A.:
 Randy M. Mastro, Mark A. Kirsch, Christopher
 M. Joralemon, David M. Kusnetz, on the brief,
 Gibson Dunn & Crutcher LLP, New York, NY.

For Amici Curiae Law Professors in
Support of Appellant:
 Laurence M. Rosen, Brent LaPointe, on the brief,
 The Rosen Law Firm, P.A., New York, NY.

For Amici Curiae Washington Legal
Foundation and Allied Educational
Foundation in Support of Appellees:
 Corbin K. Barthold, Cory L. Andrews, on the
 brief, Washington Legal Foundation,
 Washington, D.C.

 Appeal from a judgment of the United States District Court for the Southern

District of New York (Berman, J.).

 -2-
 UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED,

AND DECREED that the judgment of the District Court is AFFIRMED.

 Banco Safra S.A.-Cayman Islands Branch (“Banco Safra”) brought this putative

securities fraud class action alleging that several offshore companies connected to a

Brazilian mining operation had violated Sections 10(b) and 20(a) of the Securities

Exchange Act of 1934 (the Exchange Act), 15 U.S.C. §§ 78j(b), 78t(a), and Rule 10b-5, 17

C.F.R. § 240.10b-5, promulgated thereunder. 1 As relevant here, the United States

District Court for the Southern District of New York (Berman, J.) dismissed with

prejudice Banco Safra’s Second Amended Complaint (the “SAC” or the “Complaint”)

for failure to plausibly allege a domestic transaction under Morrison v. National Australia

Bank Ltd., 561 U.S. 247 (2010), and Absolute Activist Value Master Fund Ltd. v. Ficeto, 677

F.3d 60 (2d Cir. 2012). Banco Safra appeals this dismissal as well as the District Court’s

denial of its motion for reconsideration and to amend the Complaint. We assume the

parties’ familiarity with the underlying facts, procedural history of the case, and issues

on appeal, to which we refer only as necessary to explain our decision to affirm.

1Banco Safra also asserted various state law claims for common law fraud, negligent
misrepresentation, and aiding and abetting fraud arising out of the same set of facts.
Following its dismissal of Banco Safra’s federal claims, the District Court declined to
exercise supplemental jurisdiction over these state law claims and dismissed them
without prejudice. Because we conclude that the District Court properly dismissed the
federal claims, we affirm the dismissal of these state law claims. See Kolari v. N.Y.-
Presbyterian Hosp., 455 F.3d 118, 124 (2d Cir. 2006) (remanding with instructions to
dismiss without prejudice state law claims when federal claims were dismissed).

 -3-
 BACKGROUND

 Banco Safra is a Cayman Islands branch of the Brazilian bank Banco Safra S.A.

Between 2013 and 2015, it purchased $135,102,000 in debt securities issued by

defendant-appellee Samarco Mineração S.A. (“Samarco”), a Brazilian mining company

co-owned by two other defendants-appellees, BHP Billiton Brasil Ltda. and Vale S.A. In

2015, Samarco’s Fundão “tailings” dam, designed to hold back waste materials

produced by mining operations, collapsed, resulting in many tragic deaths and injuries

as well as significant flooding, property damage, and other environmental impacts.

Following this incident, the debt securities that Banco Safra had purchased plummeted

in value.

 At issue are “debt securities issued by Samarco between October 31, 2012 and

November 30, 2015” (the “Samarco Bonds”). App’x 402 ¶ 1. The SAC alleges that in

selling the Samarco Bonds the defendants-appellees made material misstatements and

omitted important information about the safety and other aspects of their Brazilian

mining operations. Samarco initially issued the securities under Regulation S, which

provides an exemption from registration under Section 5 of the Securities Act of 1933

for securities offered and sold outside the United States. 17 C.F.R. §§ 230.901–905.

 The SAC alleges that Banco Safra purchased most of its Samarco Bonds in

secondary aftermarket transactions “from counterparties and/or broker dealers located

in the United States.” App’x 409 ¶ 25. The District Court dismissed the Complaint with

 -4-
prejudice, however, on the ground that it failed to adequately plead a domestic

transaction under the Exchange Act as required by Morrison and Absolute Activist. The

District Court denied Banco Safra’s motion for reconsideration, which included a

request for leave to submit a Third Amended Complaint.

 DISCUSSION

 A. Dismissal of the Second Amended Complaint

 We review de novo a district court’s grant of a motion to dismiss. Stratte-McClure

v. Morgan Stanley, 776 F.3d 94, 99–100 (2d Cir. 2015). To survive a motion to dismiss

under 12(b)(6), “a complaint must contain sufficient factual matter, accepted as true, to

‘state a claim to relief that is plausible on its face.’” Ashcroft v. Iqbal, 556 U.S. 662, 678

(2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

 A private civil complaint that claims a violation of Section 10(b) must allege

relevant “transactions in securities listed on domestic exchanges, [or] domestic

transactions in other securities.” Morrison, 561 U.S. at 267. Banco Safra does not allege

that the Samarco Bonds traded on a domestic exchange. So the issue is whether Banco

Safra has alleged “domestic transactions in other securities.” Id. To establish such

transactions, a plaintiff “must allege facts suggesting that irrevocable liability was

incurred or title was transferred within the United States.” Absolute Activist, 677 F.3d at

68. “[I]t is sufficient for a plaintiff to allege facts leading to the plausible inference that

the parties incurred irrevocable liability within the United States: that is, that the

 -5-
purchaser incurred irrevocable liability within the United States to take and pay for a

security, or that the seller incurred irrevocable liability within the United States to

deliver a security.” Id. Such allegations may include “facts concerning the formation of

the contracts, the placement of purchase orders, the passing of title, or the exchange of

money.” Id. at 70. A conclusory assertion that securities transactions “took place in the

United States” by itself will not satisfy the domestic transaction requirement. Id. Nor is

it enough to allege that a United States entity was involved in a transaction. In Absolute

Activist, we explained that “[w]hile it may be more likely for domestic transactions to

involve parties residing in the United States, [a] purchaser’s citizenship or residency

does not affect where a transaction occurs; a foreign resident can make a purchase

within the United States, and a United States resident can make a purchase outside the

United States.” Id. at 69 (quotation marks omitted). Thus, merely providing the

physical location of a broker-dealer involved in the relevant transaction does not

“necessarily demonstrate where a contract was executed”—at least without additional

allegations “that the broker carrie[d] out tasks” in the United States “that irrevocably

b[oun]d the parties to buy or sell securities.” Id. at 68. This is because “territoriality

under Morrison concerns where, physically, the purchaser or seller committed him or

herself.” United States v. Vilar, 729 F.3d 62, 77 n.11 (2d Cir. 2013).

 Detailed factual allegations describing contract formation in the United States

will typically satisfy the domestic transaction test. See Giunta v. Dingman, 893 F.3d 73,

 -6-
76–77, 80 (2d Cir. 2018) (holding that plaintiffs adequately alleged a domestic

transaction where one plaintiff accepted—over lunch meetings and phone calls in

Manhattan—the defendant’s offer to invest in a venture); Vilar, 729 F.3d at 76–78

(concluding that the trial evidence would have supported a jury finding that the

underlying transactions were domestic where some fraud victims entered into and

renewed their investment agreements in the United States—including one victim who

executed the relevant documents “in her own New York apartment and handed those

documents to a New York messenger”). 2

 With these principles in mind, we consider the allegations contained in the SAC,

and in particular the three sets of allegations that Banco Safra argues satisfy the

domestic transaction requirement under Morrison.

 First, Banco Safra alleges that it “purchased Samarco bonds in domestic (U.S.)

transactions . . . and was damaged thereby. Specifically, [Banco Safra] purchased

Samarco bonds from counterparties and/or broker dealers located in the United States.”

App’x 409 ¶ 25. An exhibit to the Complaint (“Exhibit A”) lists Banco Safra’s purchases

and sales of Samarco Bonds—including, for each transaction, the name and U.S. address

of each “Counterparty/Broker-dealer,” the trade date, and the purchase or sale price in

2
 We note that a transaction is also domestic when the two sides of the transaction are
“matched”—thus forming a binding contract—on an electronic exchange system within
the United States. Myun-Uk Choi v. Tower Rsch. Cap. LLC, 890 F.3d 60, 63, 67–68 (2d Cir.
2018).

 -7-
U.S. dollars. App’x 598–600. The Complaint further alleges that “all of the

counterparties to the transactions and/or their agents were located in the United States.”

App’x 409 ¶ 27. Second, according to the Complaint, the transactions listed in Exhibit A

were “consummated with U.S. dollars” and were “conducted by Banco Safra and/or its

affiliates using $US dollars and through Banco Safra’s bank accounts located in New

York.” App’x 409 ¶ 26. And third, Banco Safra alleges that most of the after-market

transactions listed in Exhibit A were reported to the Trade Reporting and Compliance

Engine (“TRACE”), an “automated system developed by the Financial Industry

Regulatory Authority (‘FINRA’) that, among other things, accommodates reporting and

dissemination of transaction reports where applicable in TRACE-Eligible Securities.”

App’x 410 ¶ 28. We take judicial notice of FINRA’s rules governing TRACE. 3 See Fed.

R. Evid. 201. “TRACE-Eligible Securities” are defined, as relevant here, as debt

securities denominated in U.S. dollars and issued by certain specified issuers. FINRA

R. 6710(a). A FINRA member that is a “Party to a Transaction”—that is, “an

introducing broker-dealer, . . . an executing broker-dealer, or a customer,”—in a

“TRACE-Eligible Security” must report that transaction on TRACE. Id. 6710(a); 6710(b);

6720(a); 6730(a), but FINRA does not require member firms to report “debt securities

that are the subject of bona fide off-shore Regulation S transactions.” FINRA, Trade

3FINRA is a “self-regulatory organization” registered with the SEC. See Fiero v. Fin.
Indus. Regul. Auth., Inc., 660 F.3d 569, 571 (2d Cir. 2011). Its rules are subject to approval
of, 15 U.S.C. § 78s(b), and amendment by, 15 U.S.C. § 78s(c), the SEC.

 -8-
Reporting Notice, Aug. 1, 2013, at 4,

https://www.finra.org/sites/default/files/NoticeDocument/p314034.pdf.

 We easily dispense with Banco Safra’s argument that using U.S. dollars and New

York bank accounts to purchase the Samarco Bonds is enough to establish a domestic

transaction under Morrison. Because U.S. dollars can be exchanged outside of the

United States, and a transacting party can decide and agree to use or accept dollars

while abroad, the fact that U.S. dollars were used to purchase U.S.-dollar-denominated

bonds is inadequate to show that either party here incurred liability in the United States

to transact in the securities. Nor does the direction to transfer money using New York

bank accounts to purchase the bonds suffice to demonstrate a domestic transaction. See

Loginovskaya v. Batratchenko, 764 F.3d 266, 275 (2d Cir. 2014).

 Similarly, the SAC’s allegations about the location of the “counterparties/broker -

dealers” do not suffice to demonstrate a domestic transaction. These allegations suffer

from two defects. First, they are silent as to whether the “counterparties and/or broker-

dealers located in the United States,” App’x 409 ¶ 25, acted as principals who purchased

the Samarco Bonds for their own accounts and then sold them to Banco Safra, or instead

operated as agents who merely facilitated the sale and purchase of the bonds between

the parties. Second, even if we were to liberally construe the terms “counterparties”

and “broker-dealers” in the Complaint to mean that the broker-dealers acted as

principal “sellers,” the Complaint fails to allege that their agents acted in the United

 -9-
States to incur liability for the sales. Banco Safra sought to cure this defect by listing the

U.S. addresses for the broker-dealer entities themselves. But providing generic U.S.

addresses for the broker-dealers without also listing where the individuals actually

involved in negotiating the transactions were located when they negotiated the

transactions “does not necessarily demonstrate where a contract was executed.”

Absolute Activist, 677 F.3d at 68.

 Banco Safra next argues that the fact that most of its after-market transactions in

the Samarco Bonds were reported to FINRA’s TRACE system makes it plausible that

the transactions were domestic. The SAC alleges that “[o]nly U.S. (domestic) transactions

are reported to TRACE by FINRA member firms,” App’x 410 ¶ 28 (emphasis in

original), citing the 2013 FINRA Trade Reporting Notice for that proposition. See Trade

Reporting Notice, supra, at 4. But the Trade Reporting Notice does not suggest that

TRACE employs the same standard for identifying a domestic transaction as we

established in Absolute Activist. Instead, the Trade Reporting Notice states that “if a

debt security originally sold in a Regulation S transaction is subsequently purchased or

sold as part of a U.S. transaction, the [subsequent transactions] must be reported to

TRACE.” Trade Reporting Notice, supra, at 4. The language of the notice does not

prevent the reporting of non-domestic transactions or suggest that a “U.S. transaction”

in a debt security for TRACE reporting purposes is necessarily domestic as defined by

Absolute Activist. The TRACE reporting requirements do not appear to compel FINRA

 - 10 -
members to consider where irrevocable liability was incurred or where title passed

before reporting a transaction. On this record, that a transaction is reported to TRACE

does not mean that either party to the transaction acted within the United States to

incur irrevocable liability. 4

 We do not mean to suggest that the type of transaction at issue in this case can

never constitute a domestic transaction that results in a broker-dealer incurring

irrevocable liability in the United States, or that a broker-dealer acting in the United

States as a principal for its own account may never incur liability in a transaction that is

largely offshore. But the SAC does not plausibly allege a domestic securities transaction

that satisfies the requirements of Morrison and Absolute Activist. Accordingly, we affirm

the District Court’s dismissal of the SAC and its denial of Banco Safra’s motion to

reconsider that conclusion.

 B. Denial of Leave to Amend

 The District Court also denied Banco Safra’s request for leave to amend the SAC,

citing Banco Safra’s “repeated failures to cure” the Morrison deficiencies. We review the

denial of leave to amend for abuse of discretion. City of Pontiac Policemen’s & Firemen’s

Ret. Sys. v. UBS AG, 752 F.3d 173, 188 (2d Cir. 2014). Leave to amend should be “freely

4The existence of these FINRA reports could be relevant to the domestic transaction
inquiry. But the SAC does not even allege that parties report transactions to TRACE
only, or even mostly, when a party incurs irrevocable liability or title passes within the
United States.

 - 11 -
give[n] . . . when justice so requires,” Fed. R. Civ. P. 15(a)(2), but “should generally be

denied in instances of futility, undue delay, bad faith or dilatory motive, repeated

failure to cure deficiencies by amendments previously allowed, or undue prejudice to

the non-moving party.” United States ex rel. Ladas v. Exelis, Inc., 824 F.3d 16, 28 (2d Cir.

2016) (quoting Burch v. Pioneer Credit Recovery, Inc., 551 F.3d 122, 126 (2d Cir. 2008)). We

conclude that the District Court acted within its discretion in denying leave to amend. 5

 Contrary to Banco Safra’s argument, a district court is not required to grant leave

to amend when it grants a motion to dismiss based on pleading deficiencies. Porat v.

Lincoln Towers Cmty. Ass’n, 464 F.3d 274, 276 (2d Cir. 2006); City of Pontiac Policemen’s &

Firemen’s Ret. Sys., 752 F.3d at 188. And Banco Safra had ample opportunity to amend

its complaint to cure the Morrison-related deficiencies. It is thus “unlikely that the

deficiencies . . . were unforeseen.” City of Pontiac Policemen’s & Firemen’s Ret. Sys., 752

F.3d at 188.

5Banco Safra argues that we should review the District Court’s denial of leave to amend
de novo because, it claims, the court determined that amendment would be futile.
Because we uphold the denial of leave to amend on grounds unrelated to futility, we
need not address this issue.

 - 12 -
 CONCLUSION

 We have considered Banco Safra’s remaining arguments and conclude they are

without merit. For the foregoing reasons, the judgment of the District Court is

AFFIRMED.

 FOR THE COURT:
 Catherine O’Hagan Wolfe, Clerk

 - 13 -