Mary W. **CARLSON**, Plaintiff–Appellant,

v.

**PRINCIPAL FINANCIAL GROUP,** Defendant–Cross–Claimant–Appellee,

Eileen Carlson, Defendant–Cross–Defendant–Appellee.

**Docket No. 01–9466.**

United States Court of Appeals, Second Circuit.

Argued: Oct. 16, 2002.

Decided: Feb. 12, 2003.

Edgar Pauk, New York, NY, for Plaintiff–Appellant Mary W. Carlson.

Randi F. Knepper, Del Mauro, Digiaimo & Knepper, P.C., New York, NY, for Defendant–Cross–Claimant–Appellee Principal Financial Group.

Andrew Wilson, Simpson Thacher & Bartlett, New York, NY (Bruce D. Angiolillo, on the brief),for Defendant–Cross–Defendant–Appellee Eileen Carlson.

Before: LEVAL, CALABRESI, and B.D. PARKER, Circuit Judges.

B.D. PARKER, JR., Circuit Judge.

Mary Carlson appeals from a judgment of the United States District Court for the Eastern District of New York (Jacob Mishler, *Judge* ), dismissing her complaint for lack of subject matter jurisdiction. *See*

Fed.R.Civ.P. 12(b)(1). The complaint alleges that defendant Principal Financial Group ("Principal") breached ERISA § 502(a)(3) and (a)(9), 29 U.S.C. § 1132(a)(3) and (a)(9), by failing to pay Mary at least one-half of the survivor benefit of the annuity that the administrator of her late husband Donald Carlson's pension plan had purchased from Principal on Donald's behalf. The complaint also names as a defendant Eileen Carlson, Donald's first wife and, like Mary, a beneficiary of the survivor benefit of his annuity.

The District Court dismissed Mary's complaint for lack of subject matter jurisdiction. Because the complaint on its face seeks relief under ERISA, we hold that the District Court erred in dismissing it on jurisdictional grounds, and we vacate that dismissal. In addition, we offer guidance for the District Court's consideration on remand of Mary's ability to state a claim under ERISA. The District Court also declined to exercise supplemental jurisdiction over what it apparently deemed a state-law cross-claim that Principal had asserted against Eileen. Because the District Court possessed subject matter jurisdiction over the complaint, however, its dismissal of the cross-claim on jurisdictional grounds was also erroneous. Therefore, we vacate the District Court's dismissal of Principal's cross-claim.

## BACKGROUND

In reviewing the dismissal of the complaint pursuant to Fed.R.Civ.P. 12(b)(1), we accept the allegations of the complaint as true and construe them in Mary's favor. *Hirsch v. Arthur Andersen & Co.*, 72 F.3d 1085, 1088 (2d Cir.1995). Donald J. Carlson worked for the Savings Bank Trust Company from 1937 to 1983 and participated in its pension plan, which was administered by the Savings Bank Retirement System, whose name was later changed to the Retirement System for Savings Institutions. Upon his retirement in 1983, Donald elected to receive a 100% joint-and-survivor retirement benefit package, which would pay him a reduced benefit during his life ($2,795.02 per month instead of $4,320 per month) and, in the event that he was survived by both his first wife, Eileen, and his second wife, Mary, $1,397.51 per month for life to each of them. In the event that Donald were to be survived by only Mary or Eileen, the surviving beneficiary would receive the entire $2,795.02 per month for her lifetime.

On April 1, 1983, Donald began receiving his pension benefits of $2,795.02 per month, which he continued to receive each month until he died on September 30, 1995. In 1988, the Savings Bank Trust Company became the trustee of its own retirement plan and began to issue Donald's pension checks directly. In 1989, the Savings Bank Trust Company was renamed Nationar, and its pension plan was renamed the Nationar Retirement Plan (the "Plan" or the "Nationar Plan"). In 1993, Nationar filed for bankruptcy protection and, in 1995, it was taken over by the New York Superintendent of Banks.

In 1993 Nationar decided to terminate the Plan. In order to continue to fulfill the financial obligations of the Plan, it purchased annuities from Principal on behalf of all vested participants, and stopped operating the Plan. In an October 18, 1993 letter, Nationar informed Donald that "the obligation for providing your benefits under the Retirement Plan of Nationar, which has been terminated, has been transferred to the Principal Mutual Life Insurance Company ("Principal"). You will soon receive a copy of a certificate clearly reflecting Principal's obligation to provide your benefits." (Compl.¶ 21.)

In transferring the obligation to pay Donald's pension and survivors' benefits to Principal, Nationar purchased an annuity for $339,848.17. In purchasing this annuity from Principal, however, Nationar made an error: instead of purchasing a 50% survivor annuity for Mary and a 50% survivor annuity for Eileen, which would have corresponded with Donald's benefits under the Plan, Nationar mistakenly purchased a 100% survivor annuity for Eileen and no annuity for Mary. In other words, Nationar erroneously calculated the annuity based on two lives—Donald's and Eileen's—instead of three—Donald's, Eileen's, and Mary's. Mary acknowledges that the mistake was Nationar's, not Principal's. At the time, neither Donald nor Mary was aware of Nationar's error.

After Nationar ceased operating the Plan and purchased the annuities, Donald began to receive his monthly pension benefits from Principal. Mary asserts, however, that Donald never received the promised certificate reflecting Principal's obligations to him and his beneficiaries. See 29 C.F.R. § 4041.28(d)(1) (requiring plan administrator or insurer to provide participants and beneficiaries with copy of annuity contract or certificate reflecting insurer's obligation to provide plan benefits). Mary alleges that she requested a copy of the certificate from Principal several times between January 1994 and January 1995, but never received it.

Shortly after Donald's death in September 1995, Mary and Eileen both filed claims with Principal to begin receiving their survivor benefits. In a November 24, 1995 letter, however, Principal informed Mary that the annuity that Nationar had purchased on Donald's behalf was based "on [Donald's] life and a female survivor with a date of birth of October 4, 1918," which is Eileen's birth date. (Compl. ¶ 32.) Mary learned for the first time that, years earlier, Nationar had mistakenly purchased from Principal an annuity based only on the lives of Donald and Eileen, instead of an annuity based on all three lives. As a result, Nationar, in purchasing the annuity, had provided Principal with assets sufficient only to pay Eileen $2,795.02 per month for life. Because Mary is younger than Eileen, and therefore has a longer life expectancy, the assets that Principal received from Nationar were insufficient to pay $1,397.51 per month each to Mary and Eileen for their lives.

Despite the apparent entitlement of both Mary and Eileen to receive $1,397.51 per month from Nationar, Principal was unwilling or unable to provide an income stream greater than the annuity that Nationar had purchased. Instead, Principal offered to divide the assets that it had received from Nationar evenly between Mary and Eileen. Eileen, based on her birth date (October 4, 1918), would receive $1,397.51 per month for life, while Mary, based on her date of birth (May 14, 1937), would receive $1,007.55 per month for life. Based on Mary's longer life expectancy, the benefit that Principal proposed to pay to Mary was the actuarial equivalent of the benefit that it proposed to pay to Eileen.

Unsatisfied with Principal's proposal, Mary told Principal not to make any payments to her until she instructed otherwise. In the meantime, Mary also sought relief from the New York State Superintendent of Banks, which had taken over Nationar following its bankruptcy. In a January 5, 1996 letter, the Administrator of Nationar's bankruptcy estate informed Mary that, because Nationar had purchased the annuity contract from Principal before the Superintendent of Banks took possession of Nationar's business and property, "the estate of Nationar is not able to purchase another annuity contract

or otherwise provide you with additional benefits." In April 1996, Mary learned that August 10, 1995 had been established as a bar date for creditors to file claims against Nationar's bankruptcy estate. Mary obviously had not filed a claim prior to the bar date. Although Mary apparently attempted to file a claim against Nationar's estate sometime in 1996, she was not successful.

Mary initiated this action against Principal and Eileen by filing a complaint in the Eastern District of New York, asserting claims against Principal under § 502(a)(3) and (a)(9) of ERISA, but seeking no relief from Eileen. Principal answered the complaint and asserted a cross-claim against Eileen for unjust enrichment. Eileen moved to dismiss the complaint and the cross-claim for failure to state a claim, pursuant to Fed.R.Civ.P. 12(b)(6). Principal then cross-moved to dismiss the complaint for lack of subject matter jurisdiction, see Fed.R.Civ.P. 12(b)(1), and Mary cross-moved for summary judgment against Principal, see Fed.R.Civ.P. 56(a).

In an unpublished Memorandum of Decision and Order, the District Court granted Principal's motion to dismiss the complaint for lack of subject matter jurisdiction and declined to exercise jurisdiction over Principal's cross-claim. The District Court concluded that (1) Mary could not maintain an action against Principal under § 502(a)(3) because the annuity contract that Principal sold to Nationar was not an employee benefit plan within the meaning of ERISA § 3(3), 29 U.S.C. § 1002(3), and (2) Mary could not maintain an action against Principal under § 502(a)(9) because Principal was not a fiduciary with respect to the Nationar Plan. Having dismissed the complaint in its entirety, the District Court also dismissed Principal's cross-claim, which it apparently viewed as a state-law claim,

presumably because it believed it lacked subject matter jurisdiction over that claim as well. The court did not address either Eileen's motion to dismiss the complaint pursuant to Fed.R.Civ.P. 12(b)(6) or Mary's motion for summary judgment and, despite the urging of the parties, we decline to rule on either of these motions for the first time on appeal. See Singleton v. Wulff, 428 U.S. 106, 120, 96 S.Ct. 2868, 49 L.Ed.2d 826 (1976) ("It is the general rule, of course, that a federal appellate court does not consider an issue not passed upon below."). Following entry of judgment, Mary appealed. Principal did not appeal the dismissal of its cross-claim.

## DISCUSSION

### I. Subject Matter Jurisdiction

We begin our discussion where we must, and where the District Court's discussion concluded, with the question of whether that court possessed subject matter jurisdiction to entertain Mary's complaint. Adjudicating Principal's motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(1), the District Court concluded that "subject matter jurisdiction over this action is not properly grounded in ERISA, [so] this Court lacks jurisdiction to hear Plaintiff's claims." (Mem. of Decision and Order, Nov. 28, 2001, at 10 (noting also that "there is no federal subject matter jurisdiction over the causes of action asserted in the original complaint").) We disagree, and we think the District Court essentially, and incorrectly, believed that its subject matter jurisdiction was contingent on Mary's ability to state a claim under ERISA. We now attempt to remove any extant confusion between these distinct concepts.

Whether a federal court possesses federal-question subject matter jurisdiction and whether a plaintiff can state a claim for relief under a federal statute are two ques-

tions that are easily, and often, confused. *See Montana–Dakota Utilities Co. v. Northwestern Pub. Serv. Co.*, 341 U.S. 246, 249, 71 S.Ct. 692, 95 L.Ed. 912 (1951) ("As frequently happens where jurisdiction depends on subject matter, the question whether jurisdiction exists has been confused with the question whether the complaint states a cause of action."); *see also Nowak v. Ironworkers Local 6 Pension Fund*, 81 F.3d 1182, 1188 (2d Cir.1996) (noting that "[g]enerations of jurists have struggled with the difficulty of distinguishing between Rules 12(b)(1) and 12(b)(6) in federal question cases"). The cause of this confusion is understandable. "In federal question cases, the very statute that creates the cause of action often confers jurisdiction as well—that is, the claim 'arises under' the same federal law that gives the plaintiff a cause of action." *Nowak*, 81 F.3d at 1187.

■ The Supreme Court long ago explained that "if the plaintiff really makes a substantial claim under an act of Congress, there is jurisdiction whether the claim ultimately be held good or bad." *The Fair v. Kohler Die & Specialty Co.*, 228 U.S. 22, 25, 33 S.Ct. 410, 57 L.Ed. 716 (1913) (Holmes, J.). In other words, the question of whether a federal statute supplies a basis for subject matter jurisdiction is separate from, and should be answered prior to, the question of whether the plaintiff can state a claim for relief under that statute.

■ The jurisdictional inquiry is rather straightforward and depends entirely upon the allegations in the complaint: "where the complaint ... is so drawn as to seek recovery directly under the Constitution or laws of the United States, the federal court, but for two possible exceptions later noted, must entertain the suit." *Bell v. Hood*, 327 U.S. 678, 681–82, 66 S.Ct. 773, 90 L.Ed. 939 (1946). The two exceptions occur "where the alleged claim under the Constitution or federal statutes clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction or where such a claim is wholly insubstantial and frivolous." *Id.* at 682–83, 66 S.Ct. 773. Thus, in order to sustain federal jurisdiction, the complaint must allege a claim that arises under the Constitution or laws of the United States and that is neither made solely for the purpose of obtaining jurisdiction nor wholly insubstantial and frivolous.

■ Putting aside the question of whether Mary can state a claim for relief under ERISA, her complaint clearly seeks relief under that statute. *See* Compl. ¶ 3 ("Declaratory and injunctive relief are authorized by ... ERISA Section 502(a)(3), 29 U.S.C. § § [sic] 1132(a)(3)."). The complaint alleges that the Nationar Plan was an ERISA plan, that Donald was a participant in the Plan, that Mary was a beneficiary of the Plan, and that Principal breached its ERISA-imposed duty to pay Mary the 50% survivor benefit that Donald had requested.

Even more directly, the complaint alleges that federal jurisdiction is based on ERISA, and that the declaratory and injunctive relief that Mary seeks are authorized by ERISA as well. (Compl.¶¶ 2, 3.) Citing the version of ERISA in effect at the time of Donald's retirement, the complaint further alleges that Principal is required to pay Mary the qualified joint and survivor annuity that Donald elected upon his retirement. (Compl. ¶ 41 (citing ERISA § 205(a) and (g)(3), 29 U.S.C. § 1055(a) and (g)(3)).) The complaint alleges that Principal failed to pay Mary at least one-half of the survivor benefit of the annuity that Nationar purchased from Principal on Donald's behalf, in violation of § 205(a) and (g)(3). (Compl.¶¶ 42–45.)

We believe it is clear that the complaint, on its face, seeks relief under ERISA and that neither of the exceptions enumerated in *Bell v. Hood* applies. *Cf. Nowak,* 81 F.3d at 1190 ("it cannot be said that [the] complaint is 'plainly insubstantial' or that it fails to present any issue worthy of adjudication"); *Spencer v. Casavilla,* 903 F.2d 171, 173–74 (2d Cir.1990). The District Court nevertheless concluded that it lacked subject matter jurisdiction because the Principal annuity contract was not an employee benefit plan within the meaning of 29 U.S.C. § 1002(3) and because Principal was not a fiduciary of the Nationar Plan. In assessing its jurisdiction, however, the District Court erred in even examining these issues, which go to the merits of Mary's claims. *See infra* Part II. The interconnection between the basis of the District Court's jurisdiction—ERISA—and the elements of Mary's ERISA claims makes it easy to confuse the question of the court's subject matter jurisdiction with the question of the plaintiff's ability to state a claim, as the District Court seems to have done. *See* Mem. of Decision and Order, Nov. 28, 2001, at 8 ("Plaintiff fails, however, to assert a valid claim under ERISA . . . ."). Whether Mary is able to assert a valid claim under ERISA is irrelevant to the question of whether the District Court has subject matter jurisdiction over her complaint. "[I]n cases where the asserted basis for subject matter jurisdiction is also an element of the plaintiff's allegedly federal cause of action, we ask only whether—on its face—the complaint is drawn so as to seek recovery under federal law or the Constitution. If so, then we assume or find a sufficient basis for jurisdiction, and reserve further scrutiny for an inquiry on the merits." *Nowak,* 81 F.3d at 1189.

Mary's complaint was drawn so as to seek recovery under ERISA, vesting the District Court with subject matter jurisdic-tion. *See Spencer,* 903 F.2d at 173. We therefore vacate the District Court's dismissal of the complaint. We remand the case to the District Court so that it may consider, in ·the first instance, whether Mary can state an ERISA claim. *See Goldman v. Gallant Sec., Inc.,* 878 F.2d 71, 73 (2d Cir.1989) (vacating district court's dismissal for lack of subject matter jurisdiction and remanding for consideration of plaintiff's ability to state a claim).

## II. Plaintiff's Ability to State a Claim

While the District Court improperly dismissed the complaint on jurisdictional grounds, Mary's ability to state a claim under ERISA remains an open question. Although we do not attempt to answer this difficult question here, we do offer some guidance to assist the District ·Court's analysis on remand, in the event that Principal challenges the complaint's compliance with Rule 12(b)(6). In determining whether Mary can state an ERISA claim against Principal, the District Court will have to consider several questions, including (1) whether Principal is a proper defendant under ERISA and (2) whether the Nationar Plan had been terminated at the time Principal allegedly breached its obligation to provide Donald with the certificate, such that there was no ERISA plan in existence at that time. While we do not resolve either of these questions here, we believe that a brief discussion of each is in order.

### A. Whether Principal Is a Proper Defendant Under ERISA

■ With regard to the first question, while the District Court did determine, as part of its jurisdictional analysis, that Principal was not a fiduciary of the Nationar Plan, this determination alone does not answer the question of whether Principal can be a proper defendant under § 502(a)(3). Because the Supreme Court

has held that " § 502(a)(3) admits of no limit . . . on the universe of possible defendants," *Harris Trust & Savs. Bank v. Salomon Smith Barney, Inc.,* 530 U.S. 238, 246, 120 S.Ct. 2180, 147 L.Ed.2d 187 (2000), Principal's non-fiduciary status does not end the analysis. Under *Harris Trust,* a non-fiduciary may be a proper defendant under § 502(a)(3) if it would be a proper defendant under "the common law of trusts," *id.* at 250, 120 S.Ct. 2180, for example, when it is "a transferee of ill-gotten trust assets . . ., and then only when the transferee . . . knew or should have known of the existence of the trust and the circumstances that rendered the transfer in breach of the trust." *Id.* at 251, 120 S.Ct. 2180. In other words, Principal may be a proper defendant under § 502(a)(3) if Mary can demonstrate that Principal "had actual or constructive knowledge of the circumstances that rendered [its] transaction [with Nationar] unlawful." *Id.*

We reiterate that we intimate no view as to the resolution of this question. Rather, we raise the issue only to point out that, if Principal failed to provide Donald with the certificate, then Principal may have had constructive knowledge of Nationar's error. In determining, on remand, whether Mary has stated a claim against Principal under § 502(a)(3), the District Court should consider whether the allegations of the complaint suffice to make Principal a proper defendant under *Harris Trust.*

## B. Whether the Nationar Plan Was Properly Terminated

■ Next, assuming that Principal would otherwise be a proper ERISA defendant, Mary's ability to state a claim under § 502(a)(3) will depend on whether the Nationar Plan was properly terminated. The complaint alleges that Principal's wrongdoing occurred when it failed to provide Donald with the certificate. If, as Principal maintains, the Nationar Plan had already been terminated when its alleged duty to provide the certificate arose, then Principal's subsequent failure to provide Donald with the certificate would not give rise to an ERISA claim. The Supreme Court has rejected the notion that wrongdoing that occurs after an ERISA plan has been properly terminated can give rise to a claim under § 502(a)(3). *See Peacock v. Thomas,* 516 U.S. 349, 353, 116 S.Ct. 862, 133 L.Ed.2d 817 (1996). Thus, Mary's ability to state a claim against Principal will turn on whether the Nationar Plan had terminated by the time of Principal's alleged failure to send the certificate to Donald.

Once again, we do not now attempt to answer this question, and the District Court will have to sort out, on remand, whether Mary has alleged, or can allege, that the Nationar Plan had not terminated prior to Principal's alleged breach. For example, the administrator of an ERISA plan that is to be terminated must "send a notice to each person who is a participant or beneficiary under the plan . . . specifying the amount of the benefit liabilities (if any) attributable to such person as of the proposed termination date and the benefit form on the basis of which such amount is determined." 29 U.S.C. § 1341(b)(2)(B). The District Court will have to consider whether the administrator of the Nationar Plan met these obligations. We note that if the Plan was never terminated, then Principal's alleged failure to send the certificate to Donald may have occurred with respect to an ERISA plan and may permit Mary to maintain an action against Principal under § 502(a)(3).

## III. Principal's Cross–Claim Against Eileen

Because the District Court concluded that it lacked subject matter jurisdiction

over the complaint, it also dismissed Principal's cross-claim, which it apparently deemed a state-law unjust enrichment claim. Principal argues on appeal that if we reinstate Mary's complaint against Principal, then we should reinstate Principal's cross-claim against Eileen, as well. Eileen argues, however, that Principal's failure to file a notice of appeal from the District Court's judgment prevents us from considering Principal's cross-claim.

Eileen is correct, as a factual matter, that the District Court's judgment dismissed Principal's cross-claim and that Principal did not file a notice of appeal. Generally, "an appellee who has failed to file a notice of cross-appeal cannot 'attack the decree with a view either to enlarging his own rights thereunder or of lessening the rights of his adversary.'" *Kosakow v. New Rochelle Radiology Assocs., P.C.*, 274 F.3d 706, 714 (2d Cir.2001) (quoting *Burgo v. Gen. Dynamics Corp.*, 122 F.3d 140, 145 (2d Cir.1997)). We have held, however, that "the requirement of a cross-appeal is a rule of practice which is not jurisdictional and in appropriate circumstances may be disregarded." *Finkielstain v. Seidel*, 857 F.2d 893, 895 (2d Cir.1988); *see also Texport Oil Co. v. M/V AMOLYNTOS*, 11 F.3d 361, 366 (2d Cir.1993). In light of the District Court's erroneous dismissal of the complaint for lack of subject matter jurisdiction, its dismissal of the cross-claim for lack of supplemental jurisdiction was clearly incorrect as well. We deem this an appropriate case to apply the exception to the general rule, *see Texport Oil*, 11 F.3d at 366; *Finkielstain*, 857 F.2d at 895, and we therefore reinstate Principal's cross-claim.

## CONCLUSION

For these reasons, we vacate the District Court's dismissal of Mary's complaint and Principal's cross-claim, and we remand for proceedings consistent with this opinion.