Janina DAVIS and Subhana Rahim, Plaintiffs,

v.

Morad YEROUSHALMI, Moussa Yeroushalmi a/k/a Moishe Yeroushalmi, Farzaneh Yeroushalmi, Aswwad Ayinde a/k/a Arune Destula a/k/a Eric McGill, James Guy, Altria Development, LLC, M & M Developer, LLC, MBM Development, LLC, MBM Entertainment, LLC, PSY Trading, Inc., Jane Doe, and John Does 1–5, Defendants.

No. 12–cv–4167 (NG)(RML).

United States District Court, E.D. New York.

Dec. 2, 2013.

Andre Ramon Soleil, Soleil, Onua & Associates, LLP, Brooklyn, NY, for Plaintiffs.

Matin Emouna, Law Offices of Matin Emouna, Mineola, NY, for Defendants.

James Owen Guy, Clifton Park, NY, pro se.

## OPINION & ORDER

GERSHON, District Judge:

This action arises out of the competing claims of ownership to three pieces of real property located in New York City. The allegations set forth in the First Amended Complaint include assertions of assault, battery and deception, as well as extortion, bank fraud and sham conveyances. Plaintiffs contend that the allegations asserted against the defendants are sufficient to establish a civil claim for violation of the Racketeer Influenced and Corrupt Organizations (RICO) statute, 18 U.S.C. § 1961 *et seq.*, and that this court should exercise supplemental jurisdiction over the litany of state law claims also asserted. Defen-

dants move to dismiss pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, arguing that the allegations do not set forth a plausible RICO claim and that this court is therefore without subject matter jurisdiction.

Also consolidated for disposition herein is plaintiffs' motion for a preliminary injunction, by which they seek to stay several proceedings commenced in state court.

For the reasons set forth below, defendants' motion to dismiss is granted and plaintiffs' motion is denied as moot.

## I. Background

The following is a brief synopsis of the procedural history and claims, as culled from the First Amended Complaint (the "Complaint")[1] and accompanying documents.

### A. Factual Allegations

Plaintiffs Janina Davis ("Davis") and Subhana Rahim ("Rahim") are both female United States citizens residing in Brooklyn. Davis and defendant Aswad Ayinde, a.k.a Arune Destula, a.k.a. Eric McGill, also referred to as "Baku" (hereafter "Baku") are the parents of a minor child, Altria Ayinde, who is, thankfully, not involved in this action. (*See* Compl. ¶¶ 4–5, 9, 13, 18–19.) The nature of the relationship between Rahim and Baku is not described in this Complaint, but it appears that, together, they were at one point the owners of the premises located at 187 Gates Avenue, in Brooklyn.[2] (*See id.* ¶ 31.)

Defendants Morad Yeroushalmi ("Morad") and Moussa Yeroushalmi, a.k.a. Moishe Yeroushalmi ("Moussa"), are brothers. Defendant Farzaneh Yeroushalmi ("Farzaneh") is the wife of Moussa. (*Id.* ¶¶ 20–21.) Also named as defendants are several limited liability companies, all operating out of 683 Middle Neck Road, in Great Neck, New York: M & M Developer, LLC ("M & M"), the members of which are Morad and Moussa; MBM Development, LLC ("MBM–D"), whose members are Davis and M & M, and Altria Development, LLC ("Altria"), whose members are Davis, Moussa and Morad; MBM Entertainment, LLC ("MBM–E"), owned and operated by Morad and Farzaneh; and PSY Trading, Inc. ("PSY"), which is owned and operated by Baku. (*See id.* ¶¶ 13–17, 22–26.)

The three pieces of real property that are at issue in this lawsuit are located at 187 Gates Avenue and 139 Clinton Avenue, both in Brooklyn ("Gates" and "Clinton,"

---

1. First Amended Complaint, September 26, 2012. This document was initially filed on September 28, 2012 as ECF Document # 18. Over defendants' objections, I accepted this document as filed. *See* Order of October 2, 2012, ECF Document # 23. On October 17, 2012, upon notification by defendants that certain exhibits had not been filed in connection with the First Amended Complaint, plaintiffs re-filed the document, along with all of the corresponding exhibits, as ECF Document # 32.

2. Defendants have, in connection with their moving papers, submitted copies of the complaints filed in seven separate proceedings initiated in state court by Davis and/or Rahim. (*See* January 22, 2013 Affidavit of Mor-

ad Yeroushalmi [hereafter "Morad Yeroushalmi Aff."], Exs. 1, 7–12, ECF Documents # 83–1, 83–7–83–12.) The complaint filed in *Rahim v. Destula and Davis*, Index No. 31765/2004 (the "2004 State Court Action") contains allegations of an abusive and profoundly troubled defendant (Baku), and the equally troubling and abusive relationships he maintained with the women in his life, including Davis and Rahim, (*See* Morad Yeroushalmi Aff. Ex. 1, at pp. 12–16.) A summary of these allegations is contained in plaintiffs' memorandum in support of their motion for preliminary injunction. (*See* Memorandum of Law in Support of Preliminary Injunction Motion ["PI Mem. in Supp."] 1–2, ECF Document # 39–1.)

respectively), and 148 West 127th Street, in Manhattan ("W127"). According to the Complaint, Rahim and Baku transferred title of Gates to Davis in October 2003; subsequently, in October 2004, Rahim brought an action in New York State Supreme Court (Kings County), alleging, *inter alia*, that Davis and Baku had "seized her property through larceny, conversion and extortion." (Compl. ¶ 33.) Plaintiffs allege that Rahim settled her claims against Davis, but that "Baku's use of violence as a tool to compel Rahim to sign over her property interests is a legal fact as a result of his finding of liability.[3]" (*Id.* ¶¶ 33–34.[4]) Plaintiffs further allege that the claims against Davis were settled due to a payment of $100,000 to Rahim from a group comprised of the defendants herein, which plaintiffs refer to as the "Yeroushalmi Clan." (*See id.* ¶¶ 27–29, 34.) Plaintiffs allege that this payment to Rahim amounted to the initiation of the Yeroushalmi Clan's "plot to eventually take Gates from Davis without privilege, consent, or adequate consideration."[5] (*Id.* ¶ 35.)

Plaintiffs also allege that, in April 2005, Davis, the owner of W127, entered into an agreement with M & M, which resulted in the formation of MBM–D and the transfer of title in W127 from Davis to MBM–D. The goal of this arrangement was the development of W127: M & M was to pay the costs of the "rehabilitation" and a fee of $150,000 to Davis, and Davis was to convey title to MBM–D, become a 50% partner with the entity, and ultimately share in the net profits made by the joint venture. (*Id.* ¶ 39.) However, plaintiffs allege that defendants never intended to make such payment or to become Davis's partner, but rather, that the arrangement was merely a scheme to take the property without due consideration. (*Id.* ¶¶ 40–42.) Plaintiffs make similar allegations with respect to Clinton: that Davis, Moussa and Morad entered into an agreement in April 2005 resulting in the formation of defendant Altria for the purpose of developing Clinton; that Moussa and Morad would pay the costs of development as well as $200,000 to Davis; that Davis would transfer title to the property, become a 50% partner and ultimately share in the profits of Altria; and that Moussa and Morad never intended to make such payment to Davis. (*Id.* ¶ 47.)

According to the complaint, Davis "allegedly executed" deeds conveying both

---

**3.** It is not clear whether this "finding" was made by a judge or a jury, but plaintiffs later allege that Baku was "found guilty of several assaults against Rahim" in a matter entitled *"Rahim v. Destula,"* brought in New York State Family Court, and also that Baku "was found liable to Rahim for several acts of battery, assault, and intentional and negligent infliction of emotional distress." (Compl. ¶¶ 78–79.) They also allege that Baku is presently incarcerated. (*See* PI Mem. in Supp. 4: "On October 10, 2010, Mr. Ayinde was convicted of several counts of child molestation, criminal assault, rape, larceny and other crimes. He is currently serving 40 years in South Woods State Prison, Bridgeton, NJ.")

**4.** Although the party names appear in all capital letters throughout the Complaint, I have not reproduced them as such here.

**5.** There is no reference to the timing of this alleged payment. Plaintiffs do allege, however, that, "[o]n January 1, 2005, in *Rahim v. Destula*, Baku was found liable to Rahim for several acts of battery, assault and intentional and negligent infliction of emotional distress from April 2002 and August 2003 …" (Compl. ¶ 79.) I therefore infer that the alleged payment was made sometime between October 2004 and January 2005.

It bears notice that plaintiffs also refer to what appears to be a separate matter entitled *Rahim v. Destula:* "On November 24, 2004, Baku was found guilty of several assaults against Rahim in the matter *Rahim v. Destula*, 0–31968–04 [New York Family Court, Kings County], and was subject to an Order of Protection until November 24, 2006." (Compl. ¶ 78.)

Gates and W127 to MBM–D on May 6, 2005, and conveying Clinton to Altria on August 15, 2005. (*See id.* ¶¶ 49–52.) However, Davis alleges that she has "no recollection" of signing the deeds conveying Gates and W127, and that she "did not intend or agree to divest herself of interest in Clinton," nor did she receive adequate consideration for the conveyance. (*Id.* ¶¶ 49–50, 52–53; copies of the deeds are annexed to the Complaint at Exhibits E (Gates), F (W127) and G (Clinton).) She did, however, receive $150,000 from defendants for her interest in Clinton. (*Id.* ¶ 56.) Davis also maintains a residence at Clinton, in apartment number 1. (*Id.* ¶ 55.)

In May 2006, title of W127 was conveyed from MBM–D to MBM–E (an entity in which Davis did not have an interest); and in October 2006, from MBM–E to MBM–E and Baku as tenants in common. (*See* Compl. ¶ 54(a), (c); Exs. H, J.) Also in October 2006, Baku conveyed his interest in W127 to PSY, resulting in a tenancy in common between PSY (1/3) and MBM–E (2/3). (*Id.* ¶ 54(d); Ex. K.) Then, in March 2007, PSY and MBM–E transferred title to Morad and Farzaneh, resulting in a tenancy in common by the two parties, each with a 50% interest. (*Id.* ¶ 54(h); Ex. O.) [6]

### 1. The RICO Claim

These transfers form the backdrop for the substantive and conspiracy civil RICO claims asserted. Plaintiffs allege that Moussa, Morad, Farzaneh and their attorney, defendant James Guy ("Guy"), along with Baku, comprised the Yeroushalmi Clan, which constituted an enterprise within the meaning of 18 U.S.C. § 1961(4), the purpose of which was to strip Davis of her equity in the three properties, and the operation of which was conducted through a pattern of racketeering activity. (*See* Compl. ¶¶ 60–64.) Alternatively, plaintiffs allege that the corporate defendants (M & M, MBM–D, MBM–E, Altria and PSY), acting with non-party entities Ishopnomarkup.com and 23 East 39th Street Developer, LLC, constitute a corporate enterprise having the same purpose and operation via the same pattern of racketeering activity. (*Id.* ¶¶ 65–66.) As still another alternative theory of liability, plaintiffs allege that each of the corporate defendants constituted a separate enterprise whose affairs were each conducted and managed by the individual defendants through a pattern of racketeering activity. (*Id.* ¶ 70.) The pattern of racketeering activity alleged in connection with each of these purported enterprises consists of extortion, bank fraud, identification fraud and robbery. (*Id.* ¶¶ 63, 69, 70.) Plaintiffs also assert a claim for RICO conspiracy, alleging that Moussa, Guy and Baku conspired with Morad and Farzaneh in an effort to further or facilitate their criminal endeavor. (*Id.* ¶ 145.)

With respect to the purported extortion, plaintiffs allege that, between 2002 and 2005, they were both subjected to regular physical and emotional abuse by Baku, and that the conveyance of Gates from Rahim to Davis and the conveyance of Clinton from Davis to MBM–D, were effectuated by Baku's violence. (*See id.* ¶¶ 71–72, 74–79.) Plaintiffs further allege that Baku became a member of and began conspiring with the Yeroushalmi Clan in 2002, and that Baku received his first payment in April 2005 for his duties as "enforcer" and for delivery of the properties. (*Id.* ¶¶ 73, 82.) Plaintiffs allege that Morad, Moussa

---

**6.** Plaintiffs also allege that, on November 15, 2006, MBM–D transferred title in Gates to Morad and Farzaneh, but then conveyed it *back* to MBM–D by deed of the same date. (Compl. ¶ 54(e)-(f); Exs. L, M.) The effect of these conveyances is not alleged.

and Farzaneh "knew that Baku battered Davis and Rahim for the purposes of controlling them and directing their continued 'fleecing' of equity and interest in their real properties," and that this amounts to "larceny through extortion ... in an organized manner contrary to 18 U.S.C. § 1961(1)(A)." (*Id.* ¶¶ 85–86.)

With respect to the purported bank fraud, plaintiffs allege that, between May 2006 and March 2007, Morad and Farzaneh borrowed $1.3 million against the title to Clinton, $1.1375 million against the title to Gates, and $975,000 against the title to W127, without the knowledge or consent of Davis. (*See id.* ¶¶ 87–105.) Plaintiffs allege that defendants "knew or should have known that Davis would assert her claim" to each of the properties and that defendants' representations as to their ownership of the properties and the absence of competing claims amounted to fraud upon the bank in violation of 18 U.S.C. § 1344(2). (*See id.* ¶¶ 90–91, 97–98, 103–04.)

The final RICO predicate act that Plaintiffs allege is that defendants engaged in identification fraud in July 2012. Specifically, plaintiffs allege, on information and belief, that the defendants Moussa, Morad and Guy, along with the John Doe and Jane Doe defendants, appeared at the Clinton premises with a locksmith, whom they directed to change the locks to the front door of the building and of apartments 1 and 3.[7] (Compl. ¶¶ 106–108.) Plaintiffs allege that the defendants introduced one of the John Doe defendants to the locksmith as a " 'Federal Marshal' with the authority to eject 'squatters,' " and that they presented certain documents, including a picture identification and a warrant, as well as a badge appearing to iden-

tify this person as a marshal. (*Id.* ¶ 106.) Plaintiffs allege that this person was known by defendants not to be a federal marshal, that the documents and badge were forgeries, and furthermore, that the defendants did not present these documents to the police officers at the scene who told them they could not change the locks without a warrant. (*Id.* ¶ 107, 112.) Plaintiffs offer the affidavit of the locksmith, Frank Figueroa, in support of these allegations. (*See id.* ¶ 114; Ex. Q.) Plaintiffs allege that these facts give rise to a violation of 18 U.S.C. § 1028, which criminalizes "fraud and related activity in connection with identification documents, authentication features, and information."[8]

Plaintiffs allege that the pattern of racketeering activity took place between 2003 and 2007, "with the most recent act occurring in 2007," and that the common purpose of the alleged predicate acts was to defraud Davis of money and property. (*Id.* ¶¶ 118–19.) Plaintiffs further allege that the defendants' participation in certain other, unrelated legal proceedings provide evidence of "the Yeroushalmi [C]lan's continuous, ongoing pattern of criminal behavior" and is "also highly indicative of a specific threat by the Yeroushalmi Clan to extend this criminal conduct indefinitely into the future." (*Id.* ¶ 130.)

Plaintiffs allege that the defendants' activities resulted in the loss, by Davis, of $3,412,500 in equity in the three properties, and that she is entitled to damages of three times that amount, plus attorneys' fees and costs. (*See id.* ¶¶ 132–43.) This is the only injury plaintiffs allege to have been caused by the defendants' RICO-related activities.

---

7. Davis resided in apartment 1 and members of Rahim's family resided in apartment 3. (*See* Compl. ¶ 108.)

8. Plaintiffs do not cite to a specific subsection of this section.

## 2. The State Law Claims

The rest of the claims asserted arise under state law and include quiet title and replevin claims relating to all three properties and conversion relating to W127 and Clinton [9] (*see* Compl. ¶¶ 148–201); breach of contract (*see id.* ¶¶ 186–95, 219–31); battery (*id.* ¶¶ 202–03); and intentional and negligent infliction of extreme emotional distress (*id.* ¶¶ 204–18). Plaintiffs seek equitable relief and damages totaling more than $72 million, plus costs and attorneys' fees, in connection with these claims.

## B. Procedural History

This matter was commenced in August 2012 by way of order to show cause, by which plaintiffs sought to stay certain proceedings that were pending in New York State Court and to restrain defendants from taking any action with respect to the subject properties.[10] The order to show cause, dated August 21, 2012, was signed by the Hon. William F. Kuntz, II, but, during the proceedings of September 12, 2012, the temporary relief that had been granted by that order was vacated. (*See* ECF Documents # 4, 16.) Upon plaintiffs' request, a briefing schedule was set so that plaintiffs could instead seek relief by way of formal motion for preliminary injunction. (*See id.*) Also during the September 12 proceedings, I directed plaintiff's counsel to serve and file an amended complaint no later than September 26, 2012, and I set a schedule for briefing of defendants' intended motion to dismiss. (ECF Document # 16.) Although the proposed amended complaint was filed on September 28, 2012, I accepted it as filed.[11] (*See* Order dated October 2, 2012, ECF Document # 23.) After a series of extensions to the briefing schedules, plaintiffs' motion for a preliminary injunction was fully briefed on January 15, 2013, and defendants' motion to dismiss was fully briefed as of February 4, 2013.

Defendants base their motion on both Rule 12(b)(1) and Rule 12(b)(6) of the Federal Rules of Civil Procedure, asserting both a lack of subject matter jurisdiction and that plaintiffs have failed to state a claim upon which relief can be granted.

## II. Analysis

## A. The 12(b)(1) Motion to Dismiss

 Jurisdiction in the federal courts is limited to matters in which there is a federal question or diversity of citizenship.[12] *See, e.g., Perpetual Securities, Inc. v. Tang*, 290 F.3d 132, 136 (2d Cir. 2002) (citing U.S. Const. art. III, §§ 1, 2; 28 U.S.C. §§ 1331, 1332). Thus, "when the district court lacks the statutory or constitutional power to adjudicate" a case, it is dismissed pursuant to Rule 12(b)(1). *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir.2000). A case will be dismissed pursuant to Rule 12(b)(6) if the

---

9. While there is no conversion claim asserted with respect to Gates, there is a duplicate claim of replevin asserted with respect to that property. (*See* Compl. ¶¶ 198–99.)

10. Plaintiffs also sought to consolidate the present matter with one entitled *Altrea Development LLC v. Rahim*, 12–cv–4166, which had been removed from state court and was, at that time, pending before the Hon. Jack B. Weinstein. By Order dated September 19, 2012, Judge Weinstein remanded that action to state court. (*See* ECF Document # 6, filed in connection with 12–cv–4166.)

11. As previously stated, the amended complaint was later re-filed for the purpose of properly annexing the relevant exhibits. (*See* n. 1, *supra.*)

12. There is no dispute that the parties lack diversity and that the basis for this court's jurisdiction over this matter is the assertion of a federal question.

complaint does not "contain sufficient factual matter, accepted as true, to 'state a claim of relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). Where, as here, the motion is made on the basis of both Rules, the jurisdictional challenge is considered first "because a disposition of a Rule 12(b)(6) motion is a decision on the merits and, therefore, an exercise of jurisdiction." *Magee v. Nassau County Medical Center,* 27 F.Supp.2d 154, 158 (E.D.N.Y.1998).

Whether the motion to dismiss is made pursuant to Rule 12(b)(1) or 12(b)(6), the court construes the complaint in plaintiff's favor and accepts as true the allegations contained therein. *See, e.g., Mazzocchi v. Windsor Owners Corp.,* 2013 WL 5295089, at *5 (S.D.N.Y., Sept. 17, 2013). However, even though the court may draw inferences in its favor, a plaintiff seeking to defeat a Rule 12(b)(1) motion must make an affirmative showing of jurisdiction, "and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it." *APWU v. Potter,* 343 F.3d 619, 623 (2d Cir.2003). The plaintiff bears the burden of proving by a preponderance of the evidence that jurisdiction is proper. *Makarova,* 201 F.3d at 113. Moreover, while the court is bound by the pleadings and certain other limited evidence when ascertaining the sufficiency of the complaint with respect to a Rule 12(b)(6) motion, a motion under Rule 12(b)(1) permits examination of additional, extrinsic evidence. *See Mazzocchi,* 2013 WL 5295089, at *5; *see also Makarova,* 201 F.3d at 113.

■ "Whether a federal court possesses federal-question subject matter jurisdiction and whether a plaintiff can state a claim for relief under a federal statute are two questions that are easily, and often, confused." *Carlson v. Principal Financial Group,* 320 F.3d 301, 305–06 (2d Cir. 2003). This is because "the very statute that creates the cause of action often confers jurisdiction as well—that is, the claim 'arises under' the same federal law that gives the plaintiff a cause of action." *Nowak v. Ironworkers Local 6 Pension Fund,* 81 F.3d 1182, 1187 (2d Cir.1996). The "more-than-occasional difficulties in parsing a claim alleging federal question jurisdiction to determine whether it fails to state a claim or fails to meet jurisdictional requirements" has led to "a general practice of granting jurisdiction in most cases and dismissing for lack of subject matter jurisdiction only under narrow circumstances." *Id.* at 1188. Such "narrow circumstances" exist "where the alleged claim under the Constitution or federal statutes clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction or where such a claim is wholly insubstantial and frivolous." *Bell v. Hood,* 327 U.S. 678, 682–83, 66 S.Ct. 773, 90 L.Ed. 939 (1946). However, "if the plaintiff really makes a substantial claim under an act of Congress, there is jurisdiction whether the claim ultimately be held good or bad." *The Fair v. Kohler Die & Specialty Co.,* 228 U.S. 22, 25, 33 S.Ct. 410, 57 L.Ed. 716 (1913); *accord TAGC Management, LLC v. Lehman, Lee & Xu, Ltd.,* 536 Fed.Appx. 45, 48 (2d Cir.2013) (summary order) (If, "'[o]n its face … the complaint is drawn so as to seek recovery under federal law or the Constitution,'" there is "'sufficient basis for jurisdiction,' even though dismissal of the federal claims on the merits" may be appropriate) (ellipsis in original). Accordingly, when confronted with a motion to dismiss based on both 12(b)(1) and 12(b)(6), the court asks "only whether—on its face—the complaint is drawn so as to seek recovery under federal law or the

Constitution. If so, then we assume or find a sufficient basis for jurisdiction, and reserve further scrutiny for an inquiry on the merits." *Nowak*, 81 F.3d at 1189.

Here, there can be no dispute that the Complaint—on its face—is drawn to seek recovery under federal law. Although defendants argue that there is no federal claim asserted, the first two claims clearly set forth alleged violations of federal statutes, specifically, 18 U.S.C. § 1962(c) and (d). (*See* Compl. ¶¶ 60–147.) As discussed above, the plaintiffs have alleged that the individual and corporate defendants comprise an enterprise whose purpose is to deprive Davis of her alleged interest in the subject properties and that this purpose was accomplished through a pattern of activity consisting of robbery, bank fraud and identification fraud. (*See* pp. 353–55, *supra*; see also Compl. ¶¶ 60–143.) Plaintiffs have also alleged that defendants Moussa, Guy and Baku have conspired to participate in the conduct of these alleged enterprises and that they intended to further and facilitate the alleged "criminal endeavor." (Compl. ¶ 145.)

In this case, the factual allegations that purport to breathe life into plaintiffs' conclusory assertions are insufficient to rise to the level of plausibility required under *Iqbal* and *Twombly*.[13] But, that these claims "might ultimately be unsuccessful on [the] merits" is not a basis for dismissal on grounds of subject matter jurisdiction. *Southern New England Telephone Co. v.*

*Global NAPs Inc.*, 624 F.3d 123, 132 (2d Cir.2010). Moreover, although the defendants couch their motion in the language of Rule 12(b)(1), their arguments in actuality address themselves to the merits of the RICO claims. (*See, e.g.,* Mem. in Supp.[14] 10–19; Reply Mem.[15] 16–21.) The defendants' motion to dismiss on this basis is therefore denied.

## B. The 12(b)(6) Motion

A complaint will be dismissed pursuant to Rule 12(b)(6) if the factual allegations, when credited, fail to state a claim for relief that is "plausible on its face." *Twombly*, 550 U.S. at 570, 127 S.Ct. 1955. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937 (quoting and citing *Twombly*, 550 U.S. at 556–57, 127 S.Ct. 1955).

As previously noted, a court deciding a motion to dismiss construes the Complaint in plaintiff's favor and accepts as true the allegations contained within. *See, e.g., Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937. This "tenet," however, "is inapplicable to legal conclusions, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suf-

---

**13.** In fact, the RICO-related allegations are so flawed that this complaint comes dangerously close to being dismissed under Rule 12(b)(1) as "wholly insubstantial and frivolous." However, construing the complaint in the light most favorable to plaintiffs, and with a nod to the "general practice," in cases such as this one, of granting jurisdiction and proceeding to determination on the merits, I do not conclude that this court lacks subject matter jurisdiction. *See Nowak*, 81 F.3d at 1188.

**14.** Defendants' Memorandum of Law in Support of Motion to Dismiss, ECF Document # 54. Several of these pages are, however, inexplicably devoted to a discussion of mail and wire fraud, neither of which is alleged by the plaintiffs. (*See* Mem. in Supp. 13–17.)

**15.** Defendants' Reply Memorandum of Law in Support of Motion to Dismiss, ECF Document # 82.

fice." *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir.2009) (internal quotation marks omitted). Moreover, the court may consider for the purposes of this motion "documents attached to the complaint as an exhibit or incorporated in it by reference, to matters of which judicial notice may be taken, or to documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." *Brass v. American Film Technologies, Inc.*, 987 F.2d 142, 150 (2d Cir.1993). With respect to the latter category, it is the "plaintiff's *reliance* on the terms and effect of a document in drafting the complaint [that] is a necessary prerequisite to the court's consideration of the document on a dismissal motion; mere notice or possession is not enough." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir.2002) (emphasis in original).

Claims may also be dismissed under Rule 12(b)(6) where it is clear from the complaint that the claims are untimely. *See, e.g., Staehr v. Hartford Financial Services Group, Inc.*, 547 F.3d 406, 425 (2d Cir.2008) ("Dismissal under Fed. R.Civ.P. 12(b)(6) is appropriate when a defendant raises ... [a statutory bar] as an affirmative defense and it is clear from the face of the complaint, *and matters of which the court may take judicial notice*, that the plaintiff's claims are barred as a matter of law") (emphasis and alteration in original).

 Where a complaint contains allegations of fraud, "a party must state with particularity the circumstances constituting fraud or mistake." Fed.R.Civ.P. 9(b). This requirement applies to allegations of fraudulent predicate acts under the RICO statute. *First Capital Asset Management, Inc. v. Satinwood Inc.*, 385 F.3d 159, 178 (2d Cir.2004). To satisfy this heightened pleading standard, the allegations relating to the fraudulent acts must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Rombach v. Chang*, 355 F.3d 164, 170 (2d Cir.2004) (quoting *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir.1993)). Furthermore, the plaintiff must also "allege facts that give rise to a *strong* inference of fraudulent intent." *First Capital Asset Management*, 385 F.3d at 179 (emphasis in original) (citation omitted); *accord Cohen v. S.A.C. Trading Corp.*, 711 F.3d 353, 359 (2d Cir. 2013) (the plaintiff must also "plead those events which give rise to a strong inference that the defendant[ ] had an intent to defraud, knowledge of the falsity, or a reckless disregard for the truth") (alteration in original) (citation omitted).

### a. The Substantive RICO Claim—18 U.S.C. § 1962(c)

 Section 1962(c), the substantive RICO statute, provides that "[i]t shall be unlawful for any person employed by or associated with any enterprise engaged in ... interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." 18 U.S.C. § 1962(c). In order to state a plausible claim under 18 U.S.C. § 1962(c):

> [The] pleadings must demonstrate, as to each defendant, that while employed by or associated with an enterprise engaged in interstate or foreign commerce, and through the commission of at least two predicate acts constituting a "pattern of racketeering," the defendant directly or indirectly conducted or participated in the conduct of the affairs of such enterprise. The specific predicate acts that constitute racketeering activity

are defined as the criminal offenses enumerated in the statute . . .

Plaintiffs must also show that they were injured in their business or property by reason of the alleged RICO violation. To satisfy the "pattern" requirement, the factual allegations must meet two standards: relatedness and continuity. The pleadings must show that the predicate acts asserted are related and amount to or pose a threat of continuing criminal activity.

*Gross v. Waywell,* 628 F.Supp.2d 475, 485 (S.D.N.Y.2009) (internal citations omitted).

Defendants argue not only that the allegations here are insufficient to give rise to a plausible claim for violation of § 1962(c), but also that the purported RICO claim fails on statute of limitations grounds. Review of the Complaint makes clear that the plaintiffs have not provided sufficient allegations relating to, *inter alia,* relatedness and continuity, nor as to each defendant's direction or control over the alleged enterprise, nor have they alleged with sufficient particularity the events giving rise to the claims of bank fraud.[16] Since defendants raise the issue of the statute of limitations, however, and since, if the RICO claims are time-barred, there would be no basis for considering whether to grant plaintiffs leave to amend their complaint in order to cure the pleading defects, I turn to the question of whether or not plaintiffs' RICO claims have been timely brought.

■■■■■ "The statute of limitations for a civil RICO claim is four years." *Agency Holding Corp. v. Malley–Duff & Associates, Inc.,* 483 U.S. 143, 156, 107 S.Ct. 2759, 97 L.Ed.2d 121 (1987). "The limitations period begins to run when the plain-

tiff discovers or should have discovered the RICO injury." *In re Merrill Lynch Ltd. Partnerships Litigation,* 154 F.3d 56, 58 (2d Cir.1998) (*per curiam*). The present action was initiated in August 2012, and accordingly, if plaintiffs became aware of the alleged injury prior to August 2008, "their RICO claims are time-barred unless an exception to the limitations period applies." *Id.* at 59. One such exception is the "separate accrual" rule, whereby "a new claim accrues and the four-year limitation period begins anew each time a plaintiff discovers or should have discovered *a new and independent* injury." *Id.* (emphasis added).

Here, the injury plaintiffs allege to have suffered as a result of defendants' racketeering is the deprivation of Davis's equity in the three subject properties, totaling $3,412,500. (*Compl.* ¶ 143.[17]) Plaintiffs allege no additional or independent injuries caused by the defendants' alleged racketeering activities. The conveyances which led to this deprivation are alleged to have occurred between 2005 and 2007. (*See id.* ¶¶ 39–54.) Plaintiffs further allege that Davis became aware of the injury caused by these conveyances in 2007: "Upon discovery of these fraudulent conversions in 2007, Davis immediately commenced action in N.Y. Supreme Court, Kings County. At the time of this action's commencement, Davis did not know the full extent of her injuries or the Yeroushalmi Clan's criminal acts against her." (Compl. ¶ 57.)

A review of the complaints filed by Davis in 2007, however, reveals that she was aware, at that time, of the alleged fraud perpetrated against her by the defendants. Plaintiffs refer to these complaints in the Amended Complaint (*see*

---

**16.** These statements are set forth merely by way of example and are not intended to provide a comprehensive discussion of the flaws in plaintiffs' pleadings.

**17.** There is no allegation concerning an injury to Rahim resulting from the alleged RICO violations.

Compl. ¶¶ 57–58), and I consider the allegations contained within them, as discussed below, not for their truth but for their demonstration of plaintiffs' knowledge—in 2007—of the injuries she alleges to have suffered as a result of the defendants' activities. Since I may take judicial notice of documents filed in another court, "not for the truth of the matters asserted in the other litigation but rather to establish the fact of such litigation and related filings," and since "matters judicially noticed by the District Court are not considered matters outside the pleadings" for purposes of a 12(b)(6) motion, consideration of these documents in connection with this motion is appropriate. *Staehr,* 547 F.3d at 425–26.

In *Davis v. M & M Developer, LLC, Moussa Yeroushalmi, Morad Yeroushalmi, Farzaneh Yeroushalmi, and MBM Development, LLC,* Index No. 25292/2007, filed July 9, 2007 ("2007 Action # 1"), Davis alleges that she entered into an agreement with M & M, Morad and Moussa, but that she did not know at the time that Moussa "was a professional con artist" or that "Defendants were not real estate developers and that they never intended to develop" Gates, or that "[t]he real estate development idea was a cleverly designed scheme to defraud, worked out by Defendants to separate Plaintiff from her property." (Morad Yeroushalmi Aff. Ex. 7, at ¶¶ 11–13,[18]) Likewise, in *Davis v. M & M Developer, LLC, Moussa Yeroushalmi, Morad Yeroushalmi, and Altria Development, LLC,* Index No. 25293/2007, filed July 9, 2007 ("2007 Action # 2"), Davis alleges that she was defrauded out of her interest in Clinton through a similar scheme conducted by defendants. (*See id.* Ex. 8 ¶¶ 6–22.) The complaint in *Davis v. M & M Developer, LLC, Moussa Yeroushalmi, Morad Yeroushalmi, Farzaneh Yeroushalmi, MBM Development, LLC and MBM Entertainment LLC,* Index No. 109508/2007, filed July 9, 2007, contains similar allegations with respect to the transfer of title in W127. (*See id.* Ex. 9, at ¶¶ 6–20.) These complaints make clear that plaintiffs were aware of the RICO-based injury as early as July 2007, more than five years prior to the filing of the instant Complaint.

Although plaintiffs offer no arguments against dismissal on this basis in the papers submitted in connection with the motion to dismiss, they do assert, in the brief filed in support of their motion for preliminary injunction, that the defendants' efforts to change the locks and evict plaintiffs in July 2012 amounted to another predicate act under RICO, which "trespassed upon and injured [plaintiffs'] possessory interests in 139 Clinton Ave., Brooklyn, NY." (PI Mem. in Supp. 5–6.[19]) However, the only injury plaintiffs allege to have been caused by the defendants' RICO violations is that "Davis has been deprived of $3,412,500 in equity in her properties." (Compl. ¶ 145; *see also* ¶ 147.) They assert no causal link—nor could they—between the defendants' efforts to change the locks and Davis's loss of equity in the subject properties. While these allegations may arouse suspicion as to the activities of the defendants and may, in fact, give rise to some type of claim against them, they do not appear to be the cause of a new and independent injury

---

**18.** This copy of the complaint appears to be missing a page, as ¶¶ 6–9 are not included.

**19.** Plaintiffs also state in this memorandum that they realized in 2012 "that they were not isolated victims of the Yeroushalmi's predatory criminal conduct ... [but] it appeared, at that time, that the Statute of Limitation for Civil RICO had long expired." (PI Mem, in Supp. 5.)

sufficient to restart the RICO statutory timeline.

Accordingly, the substantive RICO claim has not been timely brought and is dismissed.

### b. The RICO Conspiracy Claim, 18 U.S.C. § 1962(d)

█ Plaintiffs also assert a claim, pursuant to 18 U.S.C. § 1962(d), of conspiracy to violate the RICO statute. In support of this claim, they allege that "Moussa, Guy and Baku conspired with Morad and Farzaneh, to conduct or participate, directly or indirectly, in the conduct of the affairs of the enterprises through a pattern of herein described racketeering activity," and that "Moussa, Guy and Baku intended to further an endeavor of Morad and Farzaneh which, if completed, would satisfy all of the elements of a substantive RICO criminal offense ... and adopted the goal of furthering or facilitating the criminal endeavor." (Compl. ¶ 145.) They further allege that "Davis was injured by Moussa, Guy and Baku's overt acts that are acts of racketeering or otherwise unlawful under the RICO statute," and that the alleged loss of Davis's equity in the properties is the "direct and proximate result of ... the activities of Moussa, Guy and Baku, and their conduct in violation of 18 U.S.C. § 1962(d)." (*Id.* ¶¶ 146–47.) Plaintiffs offer no other factual allegations in support of these assertions, which are wholly conclusory and insufficient to allege a plausible RICO conspiracy claim. *See, e.g., Hoyle v. Dimond,* 612 F.Supp.2d 225, 233 (W.D.N.Y.2009) ("In order to state a claim under section 1962(d), the complaint should state with specificity what the agreement was, who entered into the agreement, when the agreement commenced, and what actions were taken in furtherance of it. Conclusory allegations concerning the conspiracy are insufficient") (internal quotation marks and citation omitted). The conspiracy allegations here, as set forth above, provide no such specifics. It is clear, however, that plaintiffs rely on the same factual allegations, occurring on the same timeline, as for their substantive RICO claim. Since the statute of limitations for a RICO conspiracy claim is also four years, *see World Wrestling Entertainment, Inc. v. Jakks Pacific, Inc.,* 530 F.Supp.2d 486, 530 (S.D.N.Y.2007), *aff'd,* 328 Fed.Appx. 695 (2d Cir.2009) (summary order), the conspiracy claim is dismissed as time-barred as well.

### c. The State Law Claims

█ There is no dispute that, of the 18 claims asserted in the amended complaint, only the two civil RICO claims arise under federal law. Although plaintiffs contend that the court *may* exercise supplemental jurisdiction over the state law claims because they "involve the same parties, properties, transactions and occurrences" as the RICO claims, they also appear to recognize that dismissal of the RICO claims is likely to bring dismissal of the state law claims, stating that "Defendants *correctly* assert only that supplemental jurisdiction should not be had if original jurisdiction fails." (Mem. in Opp.[20] 4, emphasis added.)

Indeed, 28 U.S.C. § 1367(a) provides, "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related ... that they form part of the same case or controversy under Article III

---

**20.** Plaintiffs' Memorandum of Law in Opposition to the Motion to Dismiss, ECF Document # 80–1.

of the United States Constitution." However, a district court "may decline to exercise supplemental jurisdiction over a claim in subsection (a) if ... the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). Accordingly, having dismissed all the federal claims, I decline to exercise supplemental jurisdiction, and the state law claims are dismissed without prejudice. *See, e.g., Valencia ex rel. Franco v. Lee,* 316 F.3d 299, 305 (2d Cir.2003) (quoting *Carnegie–Mellon University v. Cohill,* 484 U.S. 343, 350 n. 7, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988)) ("in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims").

## C. The Preliminary Injunction Motion

In light of my conclusions set forth above, the plaintiffs' motion for a preliminary injunction is denied as moot.

## III. Conclusion

Accordingly, defendants' motion to dismiss the Amended Complaint is GRANTED. Plaintiffs' RICO claims (set forth in the Amended Complaint as the First and Second Causes of Action) are dismissed.

The remainder of plaintiffs' claims—the state law claims—are dismissed without prejudice.

Plaintiffs' motion for a preliminary injunction is DENIED as moot.

SO ORDERED.